## Moore's Estate.

Argued October 4, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*E. J. Harkins,* of *Scanlon & Harkins,* for appellant.

*Philip N. Shettig,* with him *Thomas A. Swope,* of *Shettig & Swope, George M. Spence* and *Chas. S. Evans,* of *Evans & Evans,* for appellees.

OPINION BY MR. JUSTICE LINN, December 5, 1938:

This appeal is from the probate of a paper written by the testatrix, in these words:

"Johnstown Aug 1926

"I am writeing my Will if any thing Hapins to me Before I come Home I Will ten thousand to Mrs Lizzie Lewis the rest of My Estate to be Sold and all Debts Paid I to be laid away the Same as Bob all Debts Paid the remainder to be Devided Between My Nephues & Neice and Bob Nephues & Neices and five Hundred to the Methodist Church and Five Hundred to each of the Home & Foriegan Mishinary Cocity and Five Hundred to the Cemetary Accation to Keep the Graves and Lots of Moores and Bushs in repair this is my Will I write and Sign

"MRS ANNIE S MOORE"

The appellant contends that the testatrix intended it to become effective only if she died before returning home—"if any thing Hapins to me Before I come Home" —and that, as she survived the journey, probate should have been refused.

The agreed statement of facts says that "subsequent to writing [her will, testatrix] made a journey to Cincinnati, Ohio, for the purpose of visiting her sister-in-law" Mrs. Lizzie Lewis, a beneficiary named in the will. Testatrix remained in Cincinnati "about three weeks and returned home safely, after which time she lived in the City of Johnstown until the date of her death," March 8, 1938. The will was found "in a box in her home." "Bob," mentioned in the will, was her husband, then deceased. The "Moores" and "Bushs" designated her husband's and her relatives. She left nephews and

a niece; nephews and nieces of her husband also survived. She also left a sister, Eliza Caples, who was not named as a beneficiary. Nearly twelve years passed from the time she wrote the will until she died.

Contemplating her visit to Cincinnati, she may have intended her will (a) to be effective only if she died before returning, or (b) she may have referred to the proposed visit as explaining why she made her will at that time. In the first case, her will would be effective if she died before returning, but of no effect if she returned; in the second case the will would be regarded as an absolute paper which, not having been revoked, was entitled to probate. "When the event which constitutes the contingency expressed in the instrument can be reasonably construed to have been the occasion for making the will at a particular time, rather than as the reason for making it in a particular way, it should be so construed; and further, that unless it clearly appear from the instrument itself that it was not to operate in a certain event, it will be entitled to probate": *Forquer's Estate,* 216 Pa. 331, 336. Cases* illustrating the application of the rule are numerous. While the paper might have been less ambiguous if testatrix had punctuated it, we must deal with it as it appears in the record; its ambiguity requires consideration of the circumstances in which it was written. We think her reference to the proposed trip to Cincinnati was intended as an explanation why, at that time, she made her will, to be effective whenever she might die, unless, of course, she revoked it; instead of revoking it, she retained it until her death twelve years later. Her conduct supports the inference that she did not wish to die intestate.

Order affirmed, costs to be paid out of testatrix's estate.

---

* Most of them are referred to in *Morrow's Appeal,* 116 Pa. 440, 9 A. 660; *Forquer's Estate,* 216 Pa. 331, 66 A. 92; *Davis's Estate,* 275 Pa. 126, 118 A. 645; *Dowling's Estate,* 16 D. & C. 381. See also 11 A. L. R. 846; 79 A. L. R. 1168.