NATIONAL BANK OF COMMERCE OF CHARLESTON *v.* MARY
WEHRLE *et al.*

(No. 9305)

Submitted February 24, 1942. Decided April 7, 1942.

*B. J. Pettigrew* and *A. P. Hudson,* for appellants.
*Henry Simms,* for appellee.

KENNA, JUDGE:

This chancery proceeding was instituted in the Circuit
Court of Kanawha County by the National Bank of Com-
merce of Charleston as administrator with the will an-

nexed of the estate of W. M. B. Hobbs against Mary Wehrle and others, naming as defendants, according to the record's showing, all persons who might be interested as devisees or legatees under the separate wills of W. M. B. Hobbs and Sarah Eugenia Hobbs, his wife, or who would be interested in their estates in the event that either of the wills, or certain provisions thereof, should be held to be invalid. The cause involved a number of complicated matters to which this appeal does not relate, it having been granted upon the petition of James W. Deverick, and others as the heirs at law of W. M. B. Hobbs, deceased, and involving but two questions adjudicated in the final decree complained of, being the construction of a deed to certain property in the City of Charleston made to Sarah Eugenia Hobbs in her lifetime, in order to determine whether it transferred to W. M. B. Hobbs an alienable interest in the property described, and the question whether the will of Sarah Eugenia Hobbs under its terms was intended by the testatrix to become operative only upon the happening of a named contingency which admittedly did not occur, or whether the possibility of the occurrence was merely an incentive to its execution and not intended as a condition precedent to its becoming effective. These two questions will be separately discussed in the order named.

The deed in question reads as follows:

"This Deed made this 20" day of November A. D. 1891 between Martha A. E. Hobbs and William E. Hobbs her husband of the first part, and Sarah Eugene Hobbs wife of W. M. B. Hobbs and the heirs of her body by the said W. M. B. Hobbs of the second part. All of the county of Kanawha and state of West Virginia: *Witnepeth*: That for and in consideration of One Dollar in hand paid the receipt whereof is hereby acknowledged and other valuable considerations the parties of the first part do bargain, grant and sell unto the party of the second part two lots or parcel of land lying and being in Elk City *formly* known as West End addition to the City of Charleston; they being lots 3 & 4 of Block 7 situated on the west side of Pennsylvania Avenue in said City. The lots each fronting 40 feet on Pennsylvania Avenue and

running back 120 feet to an Alley—the two containing 9,600 square feet. The same to be hers and her heirs as aforesaid forever. But should the said Sarah Eugene Hobbs die without heirs as aforesaid, then this property reverts back to the said W. M. B. Hobbs, heirs or assigns—

And the parties of the first part do hereby covenent with the party of the second part that they will warrant generally the property herein conveyed.

As witness our hands & seals.

> M. A. E. Hobbs (Seal).
> W. E. Hobbs   (Seal)."

The grantors were the parents of W. M. B. Hobbs and the property conveyed was improved. It was their admitted purpose to provide Sarah Eugenia Hobbs and her husband with a home during her life. In addition, they incorporated certain provisions for the benefit of their son, W. M. B. Hobbs. This controversy turns upon whether the deed conveyed to W. M. B. Hobbs an immediate contingent interest in the property described that became certain upon the death of his wife without heirs of the body by him, that interest being alienable by devise from the delivery of the deed, or whether, under the terms of the deed, the heirs of W. M. B. Hobbs took as purchasers, his interest being limited to a contingent life estate and alienable only as such.

Although W. M. B. Hobbs is not a formal party to the deed under consideration, and therefore most of the cases dealing with the distinction between "words of purchase" and "words of limitation" are not, strictly speaking, applicable, nevertheless, we believe that they are peculiarly persuasive upon the construction of the language "then this property reverts back to said W. M. B. Hobbs, heirs or assigns—" A scrutiny of our cases creates the impression that the different rules of construction of the language of wills and that of deeds has not always been clearly followed, but it seems uncontradicted that the word "heirs" used in a deed immediately following the taker's name is to be read as a word of limitation unless

the context clearly indicates a contrary purpose, the opposite of which we believe is here shown.

If the language just quoted is to be construed as words of purchase vesting in his heirs the remainder over after the end of a life estate, we believe it necessarily follows that the word "assigns" loses its effect entirely. Realizing that the use of the word is of no technical significance, it still seems plain from the context that the word "assigns" was not used by the grantors with the thought of restricting the power of alienation, but rather in order to confer that power upon the taker. We believe that much must be admitted, and if so, the use of the word "assigns" is in direct contradiction of the use of the word "heirs" as a word of purchase, for as such, it would limit Hobbs' powers of alienation to merely a life interest. Dealing further with the context, the use of the words "reverts back" should not be entirely ignored, though they, also, cannot be accorded technical significance. W. M. B. Hobbs had no interest in the property conveyed prior to the time the deed took effect. The words, therefore, cannot be given their usual meaning. But they do indicate, we think clearly, the intention of the grantors to place nothing more than a condition favoring his unborn children upon what would otherwise be his eventual ownership of the property described, under the belief that the effect of the deed was to deprive him of something that he would otherwise receive, or, in which he then held a present interest. This conforms with the principle that the law favors the vesting of estates and, as a necessary corollary, does not favor restricting the power of alienation.

We are under the impression that the reasons already discussed dispose of any interest that the appellants may have claimed in the pieces of property owned by W. M. B. Hobbs at the time of his death, but that we are still confronted, under the provisions of the decree called into question by this appeal, with the question of whether W. M. B. Hobbs, who died prior to the death of his wife, was at the time of his death vested with an interest that he could dispose of by devise.

At the time of the execution and delivery of the deed from Martha A. E. Hobbs and William E. Hobbs to Sarah Eugenia Hobbs, the latter and her husband had no children, so that the words "heirs of her body by said W. M. B. Hobbs," had the effect of limiting her estate, described no present takers, but did, we believe, coupled with other language of the granting clause, create what at common law would be a fee-tail special. Thompson on Real Property, Vol. 2, p. 457. This would, without more, be converted by Code, 36-1-12, into an estate in fee simple. See also, Code 36-1-13. However, when the qualified granting clause is considered, coupled with the following language found at the close of the same paragraph, "but should the said Sarah Eugene Hobbs die without heirs as aforesaid, then this property reverts back to said W. M. B. Hobbs, heirs or assigns," it becomes quite clear that it was the purpose of the grantor to vest in the grantee what would, but for the estate limited over to her husband, under our statute, be an absolute fee simple estate. The purpose to convey an interest of some kind to W. M. B. Hobbs cannot be questioned, and, having in mind the rule that a deed is to be construed as a whole as well as the provisions of Code, 36-3-4, regarding intention, which controls over rules of construction, we are of the opinion that the title conveyed to Sarah Eugenia Hobbs was subject to that interest.

It will be seen that the interest of W. M. B. Hobbs was based upon a future event that might or might not occur, and therefore, it cannot be regarded as an ascertained or certain estate of any sort, but is necessarily contingent. At the same time, the present taker of whatever estate it may be is definitely determined. In order for an estate to vest, it is not necessary that the occurrence which determines the title be certain to happen, but, subject to the rule against perpetuities, only that the interest conveyed should be adequately described and the taker definitely ascertained. There are, of course, comparatively few applicable pronouncements, but we believe that the West Virginia case of *Kidwell* v. *Rogers*, 103 W. Va. 272, 137 S. E. 5, 6, correctly decides the questions with which

we are here confronted. The following language from that case was quoted in the rather exhaustive opinion of the trial chancellor, made a part of the record:

"Executory interests are held to be not mere possibilities, but substantial interests which descend by inheritance before the happening of the contingency upon which they depend. 4 Kents Comm., p. 284 (*p.); Thompson *supra* par. 2199; 24 A. & E. Ency. Law, p. 455-6; 11 R. C. L. p. 484-5; 21 C. J. p. 1032, par. 231; *Kean's Lessee* v. *Hoffecker,* 2 Harr. 103, 29 Am. Dec. 336. A limitation similar to the one here was discussed in *Medley* v. *Medley,* 81 Va. 265, decided in 1886. That case is of particular weight because the Virginia statute of descents at that time was practically the same as ours now. That case holds: 'Such devises are not mere possibilities, but substantial interests, and as respects transmissibility, stand on the same footing with contingent remainders. If the contingency whereon the vesting depends, is a collateral event irrespective of attainment to a given age and surviving a given period, the death of the devisee pending the contingency, works no exclusion, but simply substitutes and lets in the devisee's representative.' "

We feel that it is unnecessary for us to decide the exact nature of the estate which Sarah Eugene Hobbs took under the conveyance in question due to the fact that whatever the nature of that estate was, it was contingent upon conditions, namely, her death without heirs of her body by W. M. B. Hobbs, existing at the time of either of two happenings both of which were certain to occur, namely, her death, or the death of her husband followed by the period of gestation. The interest of W. M. B. Hobbs depended upon the same alternative, the determination of which was inevitable, and occurred at the passing of the stated period after his death. We are of the opinion that under the rule enunciated in the *Kidwell* case that, regardless of whether his interest is to be classified as an executory limitation or as a contingent remainder, title thereto passed to him upon the execution and delivery of

the deed in which it was created, and that under Code, 36-1-9, he could dispose of that interest by will.

Dealing with the second question, the formal validity of the will of Sarah Eugenia Hobbs cannot now be questioned since it was probated in 1938, so that the entire question before us concerning it is whether, under its terms, it became operative or its operative effect was intended by the testatrix to apply only in the event a happening during her trip to California led to her death. The will was entirely in the handwriting of the testatrix, was prepared in 1915 and reads as follows:

> "Los Angeles Cal
> March 20" 1915
> "If enything happens to us on this trip that we shouldn't return, I want my property and all my interest in the property To be devided be*teen* my my brother and sisters and what money I have in the bank to go to Elizabeth and Marion Wehrle. My mother to have out of it enything she wants or needs. This is my will & wishes
> "Jennie Hobbs"

In the case of *French* v. *French,* 14 W. Va. 458, the holographic will had been prepared by the testator on March 7, 1872. He died on December 22, 1873, and during the intervening period his will had been carefully preserved by his wife, the sole beneficiary. The circumstances under which the will was executed were that Mr. French, evidently not a swimmer, was leaving his home for a journey of some length, during the course of which it would be necessary for him to cross an unbridged river of considerable breadth and depth. Mrs. French showed considerable apprehension, so that her husband in order to appease her, wrote a will leaving her his property, and beginning: "Let all men know hereby, if I get drowned this morning, March 7, 1872, * * *." This Court held the French will effective after the lapse of a little less than two years. It seems quite clear that the will before us in language contains no restrictive provision approaching the specific language of the French will, and that fact, coupled

with the further fact that the law does not favor intestacy, impels us to the opinion that there is no apparent error in the trial court's decree in this connection.

For the foregoing reasons, the decree of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*