In re PEARL'S ESTATE.
No. 5525.

District Court, Alaska. Fourth Division. Fairbanks.
Oct. 9, 1946.

Cecil H. Clegg, of Fairbanks, Alaska, for administrator.

Bailey E. Bell and Warren A. Taylor, both of Fairbanks, Alaska, for petitioner Byron W. Wood.

PRATT, District Judge.

J. M. Pearl, at all times after 1923 a resident of the Fairbanks Precinct and Recording District, Territory of Alaska, mailed the following described letter from Washington, D. C., on December 27, 1931, addressed to Paul Greimann, Fairbanks, Alaska, and the parts material to this cause were as follows:

"Mount Alto Hospital,
"2650 Wisconsin Ave.
"Washington, D. C.
"9–26–31.

"Dear (Boy) Paul.

" * * * Last Thursday I had the worst spell from several standpoints that I have ever had. The headache, breastache, and stomach nausea, a resultant of their co-operative aches were very severe and the almost complete blindness that came upon me lasted more than 12 hours the longest spell I have ever had. * * * I had 3 major and several minor ones at the Naval hospital. They did not understand them at all so that is why I am here. * * *

" * * * I started out to church today and got 3 blocks on my way when the eye pressure commenced and I

turned back non–too soon either for both the head and breast ache commenced and were quite severe when I arrived back at the hospital and jumped into bed. In about an hour the spell was gone. My head still aches but the vision dimming is all gone again.

"We have to give reference as nearest of kin to be notified in case of death. I gave you my boy, and in case I die if they do operate I bequeath you my belongings and property all except $100 to be given to Robert Galligher to help him in his education. I would ask to be buried here in Arlington Cemetary. I do not expect to die but to be on my way home by the 20th of Oct. or soon after as they are going right after my case properly.

" * * * I am so anxious to get home and see you all and the babes. It has been a long summer I tell you.

"With love and best wishes to all

"As ever

"Dad J. M. Pearl."

Mr. Pearl recovered sufficiently to return, in a few months, to Fairbanks, Alaska, where he remained until December of 1941. He again went to the States for needed medical attention. As a veteran of the Spanish American War, he was admitted to the veteran's hospital at Muskogee, Oklahoma, where he died upon the 9th day of July, 1944, leaving no will other than the letter above-mentioned.

On the 6th day of March, 1945, an order was duly entered, after due notice, in the probate court for the Fairbanks Precinct, Division aforesaid, in Cause No. 1019, "In the Matter of the Estate of J. M. Pearl, Deceased," admitting the above-mentioned letter to probate as the last will of said J. M. Pearl and appointing Paul Greimann administrator with will annexed. The estate, which amounted to some ten thousand dollars, reposed in the hands of the clerk of the District Court in a condemnation suit, wherein the United States had, prior to the death of Mr. Pearl, taken his land and deposited the value thereof.

On the 27th day of December, 1945, an amended petition was filed in said Cause No. 1019 Probate Court by said Byron W. Wood, a brother, praying that the order of March 6, 1945, be vacated.

On the 24th of July, 1946, said probate court entered a decree adjudging that said letter was a conditional will and vacating the order of March 6, 1945.

Said administrator has appealed from said last-mentioned order of the probate court.

The first question is whether or not said letter constitutes a contingent will.

Extraneous evidence showed that J. M. Pearl and Paul Greimann were fast friends in Chicago for about three years prior to 1923; that together in 1923 they came to Alaska where they were very closely associated thereafter. Mr. Pearl was approximately twenty years older than Mr. Greimann and always called him "son" and "my boy" and called himself "dad" and was addressed by Mr. Greimann as "dad."

The material portion of the statutes of Alaska pertaining to wills is as follows:

"Every will shall be in writing, signed by the testator, * * *;  Provided, however, that olographic wills, with or without attestation, shall be admitted to probate the same as other wills and be proved in the same manner as other private writings."  Chapter 4, Session Laws of Alaska, 1915, Sections 4612 and 4624, Compiled Laws of Alaska 1933.

"A last will and testament executed without the Territory in the manner prescribed by the law, either of the place where executed or of the testator's domicile, shall be deemed to be legally executed and shall be of the same force and effect as if executed in the mode prescribed by the laws of this Territory; provided said last will and testament is in writing and subscribed by the testator."  Section 4625, Compiled Laws of Alaska 1933.

As the letter admitted to probate was entirely in the handwriting of J. M. Pearl, was dated and signed by him, both as "dad" and "J. M. Pearl," it would qualify as a will, unless it is made contingent by the words "if they do operate."

Counsel for petitioner strongly relies on the case of Walker et al. v. Hibbard et al., 1919, 185 Ky. 795, 215 S. W. 800, 806, 11 A.L.R. 832, wherein the court, after a careful and exhaustive review of the authorities, laid down the following rules for determining whether or not a will was permanent or contingent, to wit:

" * * * if the will is so phrased as to clearly show that it was intended to take effect only upon the happening of the particular event set forth in the paper as the reason for writing it; or, putting it in other words, if it was written only to make provision against a death that might occur on account of or as a result of the specific thing assigned as a reason for writing the will—it will be a contingent will; but, if the causes assigned for writing it are merely a general statement of the reasons or a narrative of conditions that induced the testator to make his will, it will not be a contingent will, although it may set forth probable or anticipated dangers or conditions that induced the testator to write it. * * *

"It is also quite generally held that if there is reasonable doubt as to whether the will was intended to be contingent or permanent the doubt will be resolved in favor of its permanency, or, in other words, a will will not be treated as a contingent disposition of the testator's estate, unless it clearly appears from the paper itself that it was so intended to be; and the intention of the testator is to be gathered from the paper itself, but it is always admissible in arriving at his intention for the court to have the aid by extrinsic evidence of the circumstances, situation, and surroundings of the testator at the time the paper was written."

It is believed, however, that the Kentucky Court of Appeals later failed to follow this case and that the same can-

not now be considered authority, except as to the general rules of construction therein laid down.

In Watkins et al. v. Watkins' Adm'r, 1937, 269 Ky. 246, 106 S.W.2d 975, 976, the court had before it a paper reading as follows:

"Lexington, Kentucky, July 2nd, 1926.

"In view of my trip to Kansas City, Missouri, for a short visit, I am leaving this memo Will in case of my passing away for any reason. * * *

"J. L. Watkins. * * *"

The court applied the rules of construction laid down in the Walker v. Hibbard case and held the paper above-mentioned to be a permanent and not a conditional will.

In the Walker v. Hibbard case, the paper before the court read as follows:

"June 8th, 1917.

"Dear Aunt Mintie:

"On Sunday evening I go to St. Elizabeth's Hospital to have a slight operation. I do not anticipate any trouble, but no one never knows. If anything should happen to me, I want you please to do this for me. See that everything I have in the world goes to * * *.

"Mame S. Long."

This letter was held to be a contingent will not entitled to probate.

In one case the decedent did not die from the operation or in the hospital, and in the other the decedent returned safely from his journey.

In Eaton v. Brown, 1904, 193 U.S. 411, 24 S.Ct. 487, 48 L.Ed 730, the question was whether the following instrument was entitled to probate:

"Washington, D. C. Aug. 31/001.

"I am going on a Journey and may, not ever return. And if I do not, this is my last request. The Mortgage on the King House * * * to go to * * *. All the rest of my properday both real and personal to My adopted

Son  *  *  *,  All I have is my one hard earnings and and I propose to leave it to whome I please.

"Caroline Holley."

The court held that the letter was a noncontingent will which should be admitted to proof. It quoted the following from an earlier case:

" 'Courts do not incline to regard a will as conditional where it can be reasonably held that the testator was merely expressing his inducement to make it, however, inaccurate his use of language might be, if strictly construed.' "

The Supreme Court then said:

" *  *  *  it was natural to an uneducated mind to express the general contingency of death in the concrete form in which just then it was presented to her imagination. She was thinking of the possibility of death  *  *  *. But that possibility at that moment took the specific shape of not returning from her journey, and so she wrote 'if I do not return,' before giving her last commands.  *  *  * But the two gifts are both of a kind that indicates an abiding and unconditioned intent,—one to a church, the other to a person whom she called her adopted son. The unlikelihood of such a condition being attached to such gifts may be considered.  *  *  *"

The testator returned from her journey, but died in December of 1901.

In re Forquer's Estate, 1907, 216 Pa. 331, 66 A. 92, 95, 8 Ann.Cas. 1146, the instrument to be considered was as follows:

" ' " Butler, November 10th, 1882. I intend starting tomorrow morning to Bozeman, Montana, to see my brother Joseph. Knowing the uncertainty and risk of the journey, know all persons that I do hereby will and bequeath all of my personal property  *  *  *  and  *  *  *  my real estate to said Martha M. Forquer  *  *  *. And should anything befall me while away or that I should die, then in that event all my estate  *  *  *  are hereby assigned, conveyed and set over to my wife  *  *  *." ' "

The court held:

" ' * * * The expression "should anything befall me while away," standing alone, is clearly contingent. * * * We may well suppose that the testator, by the disjunctive expression which follows, "or that I should die," meant to add something to what he had already said. He had already provided for the contingency of death while on the journey. We may assume that he meant to add something by the use of the language which followed, and, if so, that he meant to make provision against the event of his death whenever it might occur. By the use of the disjunctive "or," the provision which follows excludes the thought that immediately preceded, and has, we think, the same force and meaning as if it stood alone. * * * In other words, we conclude: (1) That it does not clearly appear from the will itself that its operation was intended to be contingent; and (2) that it can, by a reasonable interpretation of its language, be construed to be absolute rather than contingent, and in either event, under the authorities, it is entitled to probate. This conclusion has been arrived at from a consideration of the language of the will itself, unaided by extrinsic evidence. * * * ' "

Death did not occur upon the journey but some twenty years later.

In Succession of Gurganus, 1944, 206 La. 1012, 20 So. 2d 296, 297, the will provided:

" * * * if anything should happen that I would not return. I want by sisters, * * * Brothers * * * to have what I own * * *."

The will was made in 1924; the maker married in 1929 and died in 1943.

The court held that it was not a contingent will.

In Ferguson v. Ferguson et al., 1931, 121 Tex. 119, 45 S.W.2d 1096, 79 A.L.R. 1163, the following holographic will was before the court:

"Last Will of Kate F. Morton

"Haskell, Texas, May 5th, 1924.

"I am going on a journey and I may never come back alive so I make this Will, but I expect to make changes if I live. * * * "

The court held:

"If the will is open to two constructions, that interpretation will be given it which will prevent intestacy. * * * "

"To hold a will contingent, it must reasonably appear that the testator affirmatively intended the will not to take effect unless the given contingency did or did not happen, as the case might be. * * * "

" * * * the will indicates that her main desire was to dispose of her property herself and not to die intestate. The fact that she referred to the journey indicates that she was thinking of the necessity for a will if she did not desire to die intestate. * * * "

" * * * it is hard to believe * * * that Mrs. Morton * * * intended that the whole will should fail and that she should die intestate, if she returned alive from a short visit * * *."

It was held that this was not a conditional will.

In National Bank of Commerce of Charleston v. Wehrle, 1942, 124 W.Va. 268, 20 S.E.2d 112, where a holographic will provided that if anything should happen to the testatrix on a contemplated trip the property should be divided in a certain manner and the testatrix returned from the trip alive and did not die for some twenty years, the court held it to be a permanent and not a conditional or contingent will.

In re Moore's Estate, 1938, 332 Pa. 257, 2 A.2d 761, 762, the testatrix's will stated:

"I am writeing my Will if any thing Hapins to me Before I come Home I Will ten thousand * * *.".

It was held not to be a contingent will where testatrix returned from the trip and died some twelve years later.

In re Langer's Estate, 1935, 156 Misc. 440, 281 N.Y.S. 866, where a will directing the disposal of testator's property in case some accident or misfortune befell him on his journey, causing him to lose his life, it was held to be a permanent will and not a contingent one, although no accident befell the testator on his journey.

In Barber v. Barber, 1938, 368 Ill. 215, 13 N.E.2d 257, where the instrument recited that testator was leaving immediately on a trip and if anything should happen to him he requested all of his property to be given to his sister, the court upheld the will as not being contingent, although death did not come to the testator on that trip.

In re Tinsley's Will, 1919, 187 Iowa 23, 174 N.W. 4, 5, 11 A.L.R. 826, the will read:

"Des Moines, Ia., Sept. 2–15.

"In case of any serious accident * * * I direct * * * ."

Extraneous evidence showed that testator was about to go to California when he made the will; that he did not die upon the trip but some two years later.

The court held:

" * * * the circumstances mentioned were the occasion for his act, and not at all that his death while on that trip was a contingency without which the will would not become operative. * * *

"The deceased was still a young man, and it would not be strange or unnatural if, * * * the idea of death was associated in his mind most prominently with the possibility of accident, thus leading him to use the expression which he employed in the writing. * * * "

The will was upheld as not being contingent.

In McMerriman v. Schiel et al., 1923, 108 Ohio St. 334, 140 N.E. 600, a will making disposition of property and ending with the following, " 'This in case that I meet with accident on this journey * * *,' " was held not to be contingent, the court stating that the case of Walker v.

Hibbard, 185 Ky. 795, 215 S.W. 800, 11 A.L.R. 832, "was not better reasoned than many other cases which hold to the contrary doctrine." It then cited the case of Eaton v. Brown, 193 U.S. 411, 24 S.Ct. 487, 48 L.Ed. 730, and followed it, stating:

" * * * In the absence of any declaration in the former decisions of this court, and in view of the irreconcilable conflict among the decisions of other states, and among the English cases, we are disposed to accept as entitled to most value the declarations of the Supreme Court of the United States. * * * "

Apparently in Mr. Pearl's letter, after stating, "and in case I die," there suddenly came to his mind the thing which seemed to carry the most imminent threat of death, to wit, the operation, and he wrote it down just as it came up, in a disjointed way. There is nothing to indicate that he intended the will to stand if he died from an operation and not to stand if he died from any one of many other different causes.

To hold the will contingent would require the court to fill in words so as to make it read as follows: "In case I die and that death comes from the contemplated operation, I bequeath," etc.

It is, therefore, held that said will is not a contingent one and that the probate court erred in so holding.