## Hueston Estate

*Basil C. Clare*, for proponent.

*Henry W. Jones* and *Edmund Jones*, for respondents.

VAN·RODEN, P. J., May 27, 1950.—Decedent died June 25, 1948, unmarried and without issue. On August 25, 1948, the register of wills admitted to probate a holographic writing dated July 12, 1947, as her last will and testament. This document consisted of a single sheet of paper, written on both sides, all of the writing being admittedly in decedent's handwriting, and containing the signature of decedent in the lower right corner of the reverse side of the sheet.

On February 20, 1950, certain heirs at law appealed from the decree of probate, alleging that the reputed will was conditional and ineffective by reason of the nonoccurence of the stated condition. They further contend that a certain provision along the right margin of the reverse side of the paper cannot qualify as a

valid testamentary disposition, on the theory that the will was not signed "at the end thereof", and that the will is therefore void in whole or at least as to the marginal clause.

The introductory paragraph on the front side of the paper reads as follows:

"In the event that I should not come through my anticipated operation successfully, I wish to leave the following to valued friends and relatives—"

The following paragraphs are all dispositive in nature. Along the right margin of the reverse side of the paper, in vertical position, appears the following:

"My interest (1/5) of the farm on Middletown Rd. to be given to my cousin, James Sherwood Hueston, 910 Barclay St. Chester. He has been a faithful friend & pal as well as cousin."

As heretofore stated, decedent's signature appears in horizontal position at the extreme right corner of the same side of the sheet containing the vertical marginal notation.

The evidence submitted at a hearing held on April 10, 1950, disclosed that decedent was seriously ill in July 1947, suffering from a massive ovarian cyst which necessitated a surgical operation. She was admitted to the hospital on July 21, 1947. On the following day, an operation was performed by Dr. Newton A. Wyman. The patient survived the operation and was discharged from the hospital on August 30, 1947, but she was not cured by the operation, and on March 2, 1948, she was readmitted to the hospital for a second operation, which was performed by Dr. Donald J. McCormick. On this occasion a preoperative diagnosis disclosing that she was suffering from pelvic peritonitis with abscess formation was made, and the surgeon removed a huge tumor adherent to the peritoneum. The patient died in the hospital on June 20, 1948.

There was evidence that during the period between her discharge from the hospital following her first operation and her readmission prior to the second operation decedent had fever, suffered from secondary anemia, was weak and run down, was unable to resume the employment which she had previous to the first operation, and that her condition became progressively worse. Dr. McCormick stated that in his professional opinion decedent "absolutely did not come through the first operation successfully". Dr. Wyman stated that although the patient survived the first operation she was "definitely" not cured by it. Thus, the old medical saw "The operation was successful, but the patient died" meets its counterpart in this case. Here, the operation was apparently not successful but the patient lived. It is however, unnecessary for the court to make a judicial determination of the success of the first operation, for we are convinced that the prefatory reference contained in the will was intended by decedent as a statement of the reason for making her will, rather than intended as a condition precedent to its effectiveness. As stated in Page on Wills vol. I, §96, pp. 208-210:

". . . the problem is whether the language employed makes the will conditional or whether it merely recites the circumstances which have induced the testator to make the will in question. . . .

"The general tendency of the courts is to regard the will as absolute rather than conditional unless the language employed by the testator unequivocally shows his intention to make the entire will conditional. . . .

"There is quite a strong tendency to treat such provisions, where possible, as descriptive of the motives which induce testator to make his will, and not as conditions on which the validity of the will depends."

In Forquer's Estate, 216 Pa. 331, 336 (1907), the rule was stated as follows:

". . . when the event which constitutes the contingency expressed in the instrument can be reasonably construed to have been the occasion for making the will at a particular time, rather than as the reason for making it in a particular way, it should be so construed; and further, that unless it clearly appear from the instrument itself that it was not to operate in a certain event, it will be entitled to probate."

Trevaskis' Estate, 345 Pa. 525 (1942), is an example of a testamentary paper subject to a condition, which was refused probate as a will because of the failure of the contingency on the happening of which it was to have taken effect. In that case, testator executed an instrument which provided: ". . . having made my third will and they were lost in the Flood at my office . . . if they cannot be found I will", and testator subsequently found the papers referred to as "lost in the Flood", it was held that the contingency in which the later will should have become effective had failed and the probate was properly refused.

An example of the other class of cases, where the prefatory statement is construed as an expression of the reason for making the will at a particular time rather than an intention that it was not to operate in a certain event, is Moore's Estate, 332 Pa. 257 (1938), where testatrix, who was about to make a journey to Cincinnati, Ohio, wrote and signed an unwitnessed paper stating: "I am writing my Will if any thing Hapins to me Before I come Home . . .", followed by dispositive provisions, and returned safely from the trip and lived for nearly two years thereafter, it was held that the writing was properly admitted to probate.

In the instant case, a reading of the will convinces the court that decedent's testamentary scheme was not contingent upon the outcome of the operation, except to the extent that death is perforce a prerequisite to

the efficacy of any will, and that the impending operation was merely textatrix's reason for making the will at that particular time. Since she had ample time to change the will during the interval between the first and second operations, but did not do so, it must be assumed that she intended to die testate and that she considered the writing of July 12, 1947, as an effective instrument for carrying out of her testamentary scheme. Under these circumstances the court holds that the writing is an unconditional will and was properly admitted to probate.

With regard to the contention that the marginal paragraph invalidated the will in its entirety, it is sufficient to note that section 2(1) of the Wills Act of April 24, 1947, P. L. 89, sec. 2, 20 PS §180.2 expressly provides that:

"The presence of any writing after the signature to a will, whether written before or after its execution, shall not invalidate that which precedes the signature."

As to appellants' alternative argument that the marginal provision is ineffective regardless of the validity of the rest of the will, we feel that the instant case is controlled by Swire's Estate, 225 Pa. 188 (1909), which involved a codicil containing eight consecutively numbered dispositive provisions, followed by a testimonium clause, with signature and seal in the lower right corner, and with paragraphs 9, 10, 11, and 12 written vertically along the left margin. It was held that the will was signed "at the end thereof". The Supreme Court stated:

"The end meant by this provision is the logical end of the language used, which shows that the testamentary purpose has been fully expressed. The position of the signature with regard to the bottom or end of the page is only evidence on the question whether the testator has completed the expression of his intention."

Similarly in Coyne Will, 349 Pa. 331 (1944) it was stated that:

"The test as to whether or not a will is signed 'at the end thereof' is not the physical point which is spatially farthest removed from the beginning. The end contemplated by the statute is the logical end of the language used by decedent in expressing his testamentary purpose."

In the instant case it is obvious from a reading of the writing in question that testatrix first disposed of her personal effects and jewelry, then her remaining personal property, and finally her undivided one-fifth interest in certain real estate, which is certainly a logical and usual sequence. It further appears obvious that she exhausted both sides of the single sheet of paper by the time she reached the item of real estate and that instead of using a second sheet of paper she turned the page sidewise and wrote the final paragraph along the right-hand margin. There was extrinsic evidence that the marginal paragraph was writ-before testatrix wrote her signature. In this connection, as pointed out in Covington Estate, 348 Pa. 1, 20 (1943), it is significant that the will was holographic, since the possibility that there was a fraudulent insertion as there might have been in the case of a typewritten document is practically negligible.

The court therefore holds that when testatrix wrote her name at the extreme lower right corner of the reverse side of the paper she intended same to be "at the end thereof", and intended to comprehend within the body of the will all writing appearing above her signature, regardless of the horizontal or vertical position thereof. It follows, therefore, that the marginal paragraph forms part of the will and was properly admitted to probate together with the rest of the document.

Accordingly, the court enters the following

*Decree*

And now, to wit, May 27, 1950, it is hereby ordered, adjudged and decreed as follows:

1. The appeal from the action of the register of wills in granting probate to the writing dated July 12, 1947, be and the same is hereby dismissed.

2. The decree of the register of wills, dated August 25, 1948, admitting the writing to probate as the last will and testament of the decedent, is hereby affirmed.

3. The parties shall bear their respective costs.