[Civ. No. 19630. Second Dist., Div. Three. Aug. 7, 1953.]

Estate of CLARK EVERETT TAYLOR, Deceased. BETTY BLACK, Respondent, v. LOTTIE TAYLOR, Appellant.

G. G. Baumen for Appellant.

Bordon & Bordon for Respondent.

VALLÉE, J.—Appeal from a judgment admitting an instrument to probate as the will of the decedent after a contest tried by the court without a jury.

The decedent, Clark E. Taylor, died March 10, 1952. The instrument is entirely in his handwriting, dated and signed by him. The contest was on the grounds the instrument is not testamentary in character, and if it is, that it is conditional. It is in the form of a letter and reads:

"Heumenie Calif.
[Hueneme]
Acorn Unit 33.
1 - 3 - 44 -

Dear. A. K. Lindsay

Sorry I did not get to
see you during Xmas
But we were ordered back
here to S.F. & then we sail
from here for the above
address on the 8th how long
we will be down there your
guess is as good as mine

Any $^{w\ a\ y}$ what I wanted
most of all to see you about
was getting a new bank book
remember I told you about me
loosing mine also ~~about~~
in case Davie Jones gets me
out in the South Pacific
ocean in other words lost at
Sea I would very much like
to turn my Bonds & cash in
the bank also the pay I will
have coming in the navy
over to

Betty Black
1935 W. 23rd St.
Los Angeles Calif.
Phone ParKway 3703.

Her¢ Mother & Father are
Mr & Mrs Ted Luschen
Same address.

Thanking you very much for

all your past favors & this one
if it should have to happen

>Sincerely,
>Clark E. Taylor

<u>over</u>

My Bank account is

>C. E. Taylor.
>5929 So Main St.
>L.A. Calif.''

On the trial of the contest, the evidence consisted of the instrument and the testimony of Betty Black received without objection. Betty testified: she was not related to the decedent; she had known him 24 years; she took Mr. Taylor to Port Hueneme in the latter part of 1943 at a time when he was getting ready to go overseas; ''[a]t the time of his departure he said in the event anything would happen to him, he was sending a paper, which I took to be the will, to Mr. Lindsay, and in case anything happened to him, that I should contact Mr. Lindsay''; the instrument was in Mr. Lindsay's possession, not in hers, from the time it was mailed by Mr. Taylor to Mr. Lindsay; she did not see Mr. Lindsay between January 3, 1944, and the date of Mr. Taylor's death; in the latter part of 1945 or 1946 Mr. Taylor was out of the military service; after he got out of the service he lived with her parents, her husband and herself, in Compton; the five of them lived together in the same house; he lived there about seven months; on one occasion, during that time, at dinner Mr. Taylor mentioned ''Mr. Lindsay had this paper that he had mailed to him, and was still holding it''; ''when he finally found an apartment of his own, he again mentioned. in case we didn't see each other again, or if anything should happen to him, that I should contact Mr. Lindsay''; in 1948 she moved to Inglewood; Mr. Taylor was living there at that time; from 1948 into 1950 he had dinner with them several times a week; on the day of his death he called on her to deliver a birthday gift and died at her home; sometime after 1948 he referred to the instrument as his will; he had had a ''bad accident on his way to Las Vegas, and he was leaving again for Las Vegas, and at that time he mentioned again, 'Well, if I should turn over again and something happens, be sure you get in touch with Mr. Lindsay about this paper, this will.' ''; after Mr. Taylor's death Mr. Lindsay got in touch with her and told her about this instrument.

After the death of Taylor, Lindsay filed the instrument with the county clerk. Betty Black petitioned for its admission to probate. Lottie Taylor, an aunt, filed the contest. She appeals from the judgment admitting the instrument to probate as the will of the decedent.

Appellant makes the same contentions here as she made below: 1. The instrument is not testamentary in character; 2. If it is testamentary in character, it is conditional.

■ One of the requisites of a valid will is that it must appear the writing was executed with testamentary intent.[1] There is no definite, fixed rule by which testamentary intent may be gauged. Cases may be cited in which papers offered for probate were established as wills in which the testamentary intent was less apparent than is the intent shown by Taylor's letter; no useful purpose would be served by citing or analyzing them as each case must stand on its own peculiar facts.

■ No particular words are necessary to show a testamentary intent. It must appear only that the maker intended by the instrument to dispose of property after his death.

■ When words which may be construed as testamentary are used in an informal document such as a letter, and it is not entirely clear that the writer intends thereby to dispose of his property at his death, extrinsic evidence may be considered in determining such intent.[2] Language similar to that used by Taylor has been held to be dispositive where the character of the document and the surrounding circumstances have indicated a testamentary intent.[3]

■ We think it plain on the face of the letter, that it is testamentary in character. Taylor was about to embark on a hazardous, dangerous voyage during the war. He was contemplating death. His thought was upon the disposition he was about to make of his property. The letter makes a complete disposition of his bonds, cash in the bank and back pay, —apparently his entire estate. Considering Taylor's friendship for Betty Black, the circumstances surrounding his act, and his declarations after the war, it seems clear he intended that in the event of his death the letter would direct the

[1]*Estate of Button,* 209 Cal. 325, 331 [287 P. 964]; *Estate of Spitzer,* 196 Cal. 301, 306 [237 P. 739].

[2]*Estate of Golder,* 31 Cal.2d 848, 850 [193 P.2d 465]; *Estate of Beffa,* 54 Cal.App. 186, 188 [201 P. 616].

[3]*Estate of Cook,* 173 Cal. 465, 467 [160 P. 553]. See, also, *Barber* v. *Barber,* 368 Ill. 215 [13 N.E.2d 257, 260-261].

distribution of the property specified therein to Betty Black. The facts seem to exclude any other inference. The words "I would very much like to turn my Bonds . . . over to Betty Black" may be construed as words of gift, as direct and certain as if Taylor had written, "I bequeath to Betty Black my Bonds. . . ." They practically have the same significance to a layman as specific words of gift.

 It is argued that there was no evidence to identify the letter admitted to probate as the paper to which Taylor referred in his conversations with Betty Black. Shortly before he wrote the letter, he told Betty he was sending a paper to Lindsay, a will, and that if anything happened to him she should contact Lindsay. After he left the service he told her Lindsay was still holding the paper; and later, after he had had a "bad accident," that if "something happens" to be sure and get in touch with Lindsay about "this paper, this will." After Taylor died, Lindsay got in touch with Betty, told her about this "instrument," and filed it with the county clerk. It may be inferred from this evidence that the letter admitted to probate is the letter to which Taylor referred in his conversations with Betty.

Appellant contends that if it be held that the letter is testamentary in character, its effectiveness was conditioned on Taylor's not returning from a sea voyage; and he, having returned, the condition was not fulfilled and the disposition did not take effect.

Probate Code, section 24, reads: "A will, the validity of which is made conditional by its own terms, shall be granted or denied probate, or denied effect after probate, in conformity with the condition." A condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect.[4]

 The test for determining whether a will is conditional is generally stated in this fashion: Did the testator intend, by the language used, to make the happening of the possibility referred to a condition precedent to the operation of the will, in which case the instrument is not entitled to probate if the condition is not fulfilled; or did he state the possibility of the happening merely as the motive or reason which led to the making of the instrument and which was carelessly stated in language suggestive of a condition, in which case the will becomes operative on the testator's death even if the event, the possibility of which appears to have induced the will, has

---

[4] Prob. Code, § 142.

not taken place?[5] One may, by way of narrative, state a contingency he has in mind as the inducement for making his will, or he may, on the contrary, state it as the condition on which the will is to become operative.

■ In order to require a denial of admission to probate on the ground that death did not occur in circumstances contemplated by the decedent, the writing must contain language which clearly indicates a purpose to limit its operation.[6]

■ Courts will not regard a will as conditional when it reasonably can be held that the testator was merely expressing his inducement to make it, however inaccurate his use of language might be if strictly construed.[7] ■ The language should be held to be mere inducement if that construction is fairly permissible.[8] A condition will not be implied from indefinite language.[9] ■ Particularly in the case of those in the military or naval service, who are liable to sudden peril, and whose informal wills receive high favor at the hands of the courts, language expressive of special apprehension as inducement to a will is not readily construed into a positive condition.[10] ■ A statement in a will which merely indicates the necessity of a will does not render it conditional.[11] The fact that the testator left a will implies he did not intend to die intestate.[12] ■ All the surrounding circumstances, including the preservation of the document after the apparent

[5]*Damon* v. *Damon,* 90 Mass. (8 Allen) 192; *Skipwith* v. *Cabell's Ex'r.,* 60 Va. (19 Grat.) 758, 782; *Barber* v. *Barber,* 368 Ill. 215 [13 N.E.2d 257, 261]; *McMerriman* v. *Schiel,* 108 Ohio St. 334 [140 N.E. 600, 602]; *In re Forquer's Estate,* 216 Pa. 331 [66 A. 92, 93, 8 Ann. Cas. 1146]; *Ferguson* v. *Ferguson,* 121 Tex. 119 [45 S.W.2d 1096, 1098, 79 A.L.R. 1163]; *In re Tinsley's Will,* 187 Iowa 23 [174 N.W. 4, 7, 11 A.L.R. 826]; 57 Am.Jur. 455, § 673; Anno.: 11 A.L.R. 846; 79 A.L.R. 1168; 3 Mo.L.Rev. 83.

[6]See cases collected 11 A.L.R. 846; 79 A.L.R. 1168.

[7]*Eaton* v. *Brown,* 193 U.S. 411 [24 S.Ct. 487, 48 L.Ed. 730, 732]; *Likefield* v. *Likefield,* 82 Ky. 589 [56 Am.Rep. 908]; *Watkins* v. *Watkins' Adm'r.,* 269 Ky. 246 [106 S.W.2d 975, 976-977]; *Barber* v. *Barber,* 368 Ill. 215 [13 N.E.2d 257, 261]; 57 Am.Jur. 454, § 672; 8 Ann.Cas. 1150; 79 A.L.R. 1168.

[8]*Ferguson* v. *Ferguson,* 121 Tex. 119 [45 S.W.2d 1096, 1097-1098, 79 A.L.R. 1163]; *American Trust & Safe Deposit Co.* v. *Eckhardt,* 331 Ill. 261 [162 N.E. 843, 845]; Anno. 11 A.L.R. 846; 54 A.L.R. 933; 35 Mich.L.Rev. 1049, 1060.

[9]*Cartwright* v. *Cartwright,* 158 Ark. 278 [250 S.W. 11, 14].

[10]*In the Goods of Spratt* (1897), Prob. Div. 28.

[11]*Ferguson* v. *Ferguson,* 121 Tex. 119 [45 S.W.2d 1096, 1098, 79 A.L.R. 1163].

[12]*Ferguson* v. *Ferguson,* 121 Tex. 119 [45 S.W.2d 1096, 1097, 79 A.L.R. 1163].

condition has failed, and instructions to take care of it, should be considered in determining whether the testator regarded the contingency as relating to the motive inducing the making of the will rather than as a condition to its becoming operative.[13] Delivery of the will by the testator to someone for preservation is some evidence he intended the will to be unconditional.[14] Parol evidence, including declarations of the testator, is admissible to show that his intention was to make an absolute and not a conditional will.[15] In *Estate of Vines* (1910), Probate Division 147, the court admitted evidence of declarations of the testator, made down to within a short time before he died, to the effect that the will in question was all right and that his wife would take all he had to leave. The fact that no will has subsequently been executed is itself favorable to the absolute character of the disputed instrument.[16] Of course, a subsequent desire that a will once conditional should become absolute is ineffective without reexecution or republication of the will.[17]

The cases on the question of whether wills are conditional are numerous, and vary in results with the phraseology of each instrument.[18] The language in *Strauss* v. *Schmidt*, 3 Phil.

[13]*In the Goods of Mayd*, 6 Prob. Div. 17; *Cody* v. *Conly*, 68 Va. (27 Grat.) 313, 320; *In re Davis' Estate*, 275 Pa. 126, 131 [118 A. 645]; *Dowling's Estate*, 16 Pa. Dist. & Co., 381, 385; *French* v. *French*, 14 W.Va. 458, 486-500; *National Bank of Commerce* v. *Wehrle*, 124 W. Va. 268 [20 S.E.2d 112, 115]; *Likefield* v. *Likefield*, 82 Ky. 589 [56 Am. Rep. 908, 912]; *Watkins* v. *Watkins' Adm'r.*, 269 Ky. 246 [106 S.W.2d 975, 977]; *McMerriman* v. *Schiel*, 108 Ohio St. 334 [140 N.E. 600, 601]; *Barber* v. *Barber*, 368 Ill. 215 [13 N.E.2d 257, 261]; *Succession of Gurganus*, 206 La. 1012 [20 So.2d 296, 299]; 35 Mich.L.Rev. 1049, 1061.

[14]*Likefield* v. *Likefield*, 82 Ky. 589 [56 Am.Rep. 908].

[15]*Barber* v. *Barber*, 368 Ill. 215 [13 N.E.2d 257, 261]; *Dowling's Estate*, 16 Pa. Dist. & Co. 381, 385; *Massie* v. *Griffin*, 59 Ky. (2 Metc.) 364, 368; *Likefield* v. *Likefield*, 82 Ky. 589 [56 Am.Rep. 908]; *McMerriman* v. *Schiel*, 108 Ohio St. 334 [140 N.E. 600]; 68 C.J. 631, § 256; 35 Mich.L.Rev. 1049, 1060.

[16]1 Schouler, Wills, Executors & Adm'rs., 6th ed. 490, § 414.

[17]*In re Tinsley's Will*, 187 Iowa 23 [174 N.W. 4, 7, 11 A.L.R. 826]; Anno. 8 Ann.Cas. 1150, 1152.

[18]Illustrations of language held not to make the will conditional are: ''On leaving this station for Thargomindah and Melbourne, in case of my death on the way.'' *In the Goods of Mayd*, 6 Prob. Div. 17; ''In case of any fatal accident happening to me, being about to travel by railway.'' *In the Goods of Dobson*, L.R. 1 P. & D. 88; ''If any thing should happen me while in India.'' *Estate of Vines* (1910), Prob. Div. 147; ''If I do buy it [if I am killed].'' *Estate of Pawle*, 34 Times Law Rep. 437; ''I am writeing my Will if any thing Hapins to me Before I come Home.'' *In re Moore's Estate*, 332 Pa. 257 [2 A.2d 761]; ''If enything happens to us on this trip that we shouldn't return.'' *National Bank of Commerce* v. *Wehrle*, 124 W.Va. 268 [20 S.E.2d 112, 115-116];

209, 161 Eng.Rep. 1304, was similar to Taylor's. The testator said "in case I should die on my travels." He returned home. The will was held unconditional, it being shown that he recognized the paper as his will shortly before his death. The wording of the will in *Maxwell* v. *Maxwell*, 60 Ky. 90 [3 Metc. 101], also was "in case I should die on my travels." The will was held unconditional.[19]

Rarely is it to be supposed that a testator means that the will he leaves unrevoked at his death was only meant to operate if he died at some particular time. The meaning of what Taylor said is, "knowing the uncertainty of human life, and being about to enter on something particularly dangerous, I make this will." We think the language of the instrument, when considered in the light of the surrounding circumstances together with Taylor's declarations after his return, is fairly susceptible of the construction that he was merely narrating an approaching event as an inducement for making the will. A fair inference is that his reference to "in case Davie Jones gets me out of the South Pacific ocean" was intended as an explanation why he made his will at that time, to be effective whenever he might die; unless, of course, he revoked it. Instead of revoking it, he had it preserved until his death eight years later. Taylor did not expressly limit the operation of the will to a certain time; nor does it appear

---

"Should a misfortune befall me on my journeys and I thereby lose my life." *In re Langer's Estate*, 156 Misc. 440 [281 N.Y.S. 866, 868]; "In case of accident I sign this my will." *Bateman* v. *Pennington*, 3 Moore P.C. 223, 13 Reprint 95; "I leave this as a memoranda of my wishes should anything happen to me during my intended trip." *In re Redhead's Estate*, 83 Miss. 141 [35 So. 761]; "I am going away; I may never return. I leave my property to Gaines and Dan; dispose of it as you think fit." *Cody* v. *Conly*, 68 Va. (27 Grat.) 313, 314; "I am going on a Journey and may, not ever return. And if I do not, this is my last request." *Eaton* v. *Brown*, 193 U.S. 411, 412 [24 S.Ct. 487, 48 L.Ed. 730]; "Whereas I am going to go on a journey to Mexico, and should I die, . . . . my wife . . . is entitled to collect and draw all my outstanding monies." *Re Rempel Estate*, 32 Man. 126, 68 Dom. L.R. 677, 678; "If anything happens that the operation is not successful I want you to have everything." *Re Swords* (1929), 3 Dom. L.R. 564, 566; "To whom it may consern that I. Michael P. Dowling is to go on opperation for a groth in the head if anything serious shoud happen to me I leave all I own to." *Dowling's Estate*, 16 Pa. Dist. & Co. 381; "Let all men know hereby, if I get drowned this morning, March 7, 1872, that I bequeath all my property, personal and real, to my beloved wife." *French* v. *French*, 14 W.Va. 458, 462; "I request that in the event of my death while serving in this horrid climate, or any accident happening to me." *Matter of Thorne*, 4 Swab. & Tr. 36, 164 Reprint 1428. See, also, anno. 11 A.L.R. 853.

[19]See, also, *In re Tylden*, 18 Jur. 136; *In the Goods of Dobson*, L.R. 1 P. & D. 88.

that it was to take effect only in the event he died in the South Pacific. Manifestly, he did not intend to die intestate, as appears from the extrinsic evidence which confirms the unconditional character of the testamentary disposition and clearly indicates that passing of title to his property was contingent on the happening of but one event—death.

We hold that the instrument is testamentary in character—a will; and that it was absolute and not conditional.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied September 1, 1953, and appellant's petition for hearing by the Supreme Court was denied October 1, 1953.