[Civ. No. 22695.   Second Dist., Div. One.   Apr. 22, 1958.]

Estate of GREGORIO DEL VAL, Deceased. JUANA DEL VAL VDA de DAYRIT et al., Appellants, v. B. V. DISON et al., Respondents.

Mitchel & Strange and James R. Biram for Appellants.

C. M. Castruccio, Harold W. Kennedy, County Counsel (Los Angeles), and James W. Goodman, Deputy County Counsel, for Respondents.

LILLIE, J.—On February 28, 1956, Gregorio Del Val died leaving a holographic will dated April 14, 1955, which was admitted to probate on April 11, 1956. E. A. Winstanley, public administrator, was appointed administrator with will annexed of the estate. Basilio and Victoria Dison, husband and wife, respondents herein, are the sole legatees under the instrument.

Juana del Val Vda de Dayrit, sister, Sixto Tanjuanguio and Honorio del Val, nephews, and Isabel Val Zapanta, niece of deceased, all residents and citizens of the Republic of the Philippines, filed a petition for revocation of probate of will. The contestants alleged therein that the document admitted to probate on April 11, 1956, is not a valid testamentary instrument in that it was a conditional will, the condition of which was never fulfilled, making the instrument inoperative and invalid as a will.

The matter was heard by the court sitting without a jury and after hearing all of the evidence the trial judge made, among others, the following finding of fact: "It was not the

intention of said deceased that the language in his said will 'if there is anything happen to me tonight . . .' be a condition in his will."

On March 28, 1957, the court entered its judgment denying contestants' petition to revoke probate of will. It is from this judgment contestants appeal.

The following facts were submitted to the trial court by way of stipulation. The sole legatees and the respondents herein, Victoria and Basilio V. Dison, had known the deceased for a period of 41 years. They had many friends in common and he made frequent social visits to their home. For 10 years prior to his death decedent had had a heart condition. On April 14, 1955, the day before he went to the hospital, the deceased wrote in his own hand the following document:

> "Thursday April 14,  55
> 1666 W. 28th St.,
> Los Angeles, Cal

"That I Gregorio Del Val of a sound mind, if there is anything happen to me to night I leave all my belongings to Mr. B. V. Dison and to his wife Mrs. Victoria Dison including my money in The Banks of America #21

> Gregorio Del Val"

and delivered it to Victoria, saying: "This is my will. Take care of it." Around noon the following day he went to the White Memorial Hospital where he stayed four weeks. Upon his release he went to the home of the Disons and remained there approximately three and a half months. During this period and at no time after April 14, 1955, was there any conversation among them about the will. He died of a heart condition on February 28, 1956.

Appellants contend that the instrument admitted to probate is expressly conditional on its face and that the evidence was insufficient to support the finding that it was not the intention of the decedent that the language "If there is anything happen to me tonight . . ." be a condition in the will. In brief, they claim that the effectiveness of the instrument was conditioned on his dying "tonight" and he, not having died at that time, the condition was not fulfilled and the disposition did not take effect.

Section 24 of the Probate Code accords conditional wills statutory recognition in this state. Whether an instrument constitutes a conditional will is of course a matter of con-

struction. To aid a proper construction of a will as conditional, section 142 of the Probate Code expressly defines a condition precedent. Whether such a condition has been created depends not only on the language employed by the decedent but on his intention in using it.

In the interpretation of a will, ascertainment of the intention of the testator is the cardinal rule of construction to which all other rules must yield. (Prob. Code, § 101; *Estate of Salmonski*, 38 Cal.2d 199 [238 P.2d 966]; *Estate of Lawrence*, 17 Cal.2d 1 [108 P.2d 893]; *Estate of Foley*, 126 Cal. App.2d 810 [273 P.2d 26]). In line with the well-established rule set out in *Estate of Sewall*, 14 Cal.App.2d 554 [58 P.2d 744], and Probate Code, section 102, that the construction of an instrument preventing intestacy is to be favored over one which results in intestacy, our courts will not regard a will as conditional when it reasonably can be held that the testator in using the language in question was merely expressing his motive or inducement to make the will.

The leading case in California on the subject of conditional wills is *Estate of Taylor*, 119 Cal.App.2d 574 [259 P.2d 1014]. The court in that case set up the test to be used in determining whether certain language constitutes a narrative reciting the inducement or motive of the decedent or is in fact a condition required to be fulfilled before an instrument attains a testamentary character. Taylor, about to go overseas during the war, executed a document in the form of a letter wherein he used the following language: "in case Davie Jones gets me out in the South Pacific ocean in other words lost at sea . . ." He died 10 years later. The appellant therein contended that since Taylor returned from the sea voyage the condition was not fulfilled and the disposition did not take effect. The court held that it was an absolute will. In discussing the test to be used in determining whether a will is conditional, the court said, at page 580, "Did the testator intend, by the language used, to make the happening of the possibility referred to a condition precedent to the operation of the will, in which case the instrument is not entitled to probate if the condition is not fulfilled; or did he state the possibility of the happening merely as the motive or reason which led to the making of the instrument and which was carelessly stated in language suggestive of a condition, in which case the will becomes operative on the testator's death even if the event, the possibility of which appears to have induced the will, has not taken place? One may, by way of narrative, state a contingency

he has in mind as the inducement for making his will, or he may, on the contrary, state it as the condition on which the will is to become operative.

■ "In order to require a denial of admission to probate on the ground that death did not occur in circumstances contemplated by the decedent, the writing must contain language which clearly indicates a purpose to limit its operation." The court there made an exhaustive study of many cases involving instruments containing various kinds of phraseology. It serves little purpose here to review them in view of the clear language of the court in the Taylor case except to comment that they all expound the general theory that if the decedent intended in the use of the language in question to recite the inducement or motive for executing the instrument, then it becomes operative as a testamentary document.

Perhaps language closest to that used by Del Val is found in the will construed in the case of *French* v. *French*, 14 W.Va. 458. This phraseology was used: ". . . If I get drowned this morning, March 7, 1872." The court held that this language was an expression of the decedent's motive for writing the instrument and that the will was unconditional in nature. The testator wrote the will before starting a journey over an unbridged river. He returned safely and did not die until one year later. Another case involving an instrument using similar language in which the court held the will to be absolute is *Dowling's Estate*, 16 Pa.Dist. & Co. 381. The testator wrote ". . . I, Michael P. Dowling is to go on opperation for a groth in the head if anything serious shoud happen to me I leave all I own to. . . ." In the case of *In re Tinsley's Will*, 187 Iowa 23 [174 N.W. 4, 11 A.L.R. 826], the court construed the phrase "In case of any serious accident . . ." as sufficient to indicate a testamentary intent. A similar holding is found in *Re Swords*, Dom.L.R. 564, 566, in which the instrument used these words, "If anything happens that the operation is not successful. . . ."

■ In determining the testator's intent, of course, the court must look first to the language itself and how it is used in conjunction with the rest of the document. ■ Recognizing that many lay people who write wills in their own hand are unfamiliar with legal terms, often are not too well educated and many times inaccurate in their use of language, the courts have been lenient in their interpretation of the documents in order to put into effect the testator's intention. (*Estate of Soulie*, 72 Cal.App.2d 332 [164 P.2d 565] ; *Estate*

*of Eggleston,* 129 Cal.App.2d 601 [277 P.2d 469].) ▉ In line with this general policy, our courts have also held that the language in question should be interpreted to be mere inducement if that construction is fairly permissible (*Buttram* v. *Finley,* 37 Cal.App.2d 459 [99 P.2d 1093] ; *Estate of Taylor, supra*). ▉ Those circumstances which the court may take into consideration in determining whether the deceased regarded the contingency as relating to the motive inducing the making of the will rather than as a condition to its becoming operative, of course differ in each case, but generally they include those surrounding the execution of the document and its delivery; the testator's state of health; his plans for the future, the preservation of the document, particularly after the contingency has failed; instructions upon delivery; subsequent declarations of the testator; lack of another subsequent will; lack of alternative disposition of the property and the amount of the estate disposed of by the instrument.

▉ In the instant case Del Val had suffered from a heart condition for a period of 10 years before his death. At the time he executed the instrument in question he no doubt contemplated death because the next day he was admitted to the White Memorial Hospital for a condition that was serious enough to require hospitalization for four weeks. Before going to the hospital he wrote the words in question which are obviously expressive of a special apprehension. The court in the case of *In re Tinsley's Will, supra,* cited as authority by the court in *Estate of Taylor, supra,* interpreted the words of such general character in a will as ". . . if anything happens to me" to mean "if I should die." Del Val, contemplating that he might die "tonight" felt a necessity to draw the instrument so that the Disons would take his estate. His intent that by this document they should do so then and later, as the case might be, is borne out by the fact that when he handed the document to Mrs. Dison he said, "This is my will. Take care of it." He did not limit its preservation by Mrs. Dison to any particular time; in fact all of his conduct points to the inference that he meant for her to keep it until he died, whenever that might be. Upon his release from the hospital he lived with the Disons for three and a half months. He at no time subsequent to April 14, 1955, discussed the will with them again. He did not ask for the document's return even though he was closely associated with them, nor did he execute any other will or revoke the one dated April 14, 1955, all of which is

favorable to the absolute character of the document. The instrument shows on its face that he intended to dispose of his entire estate and at no place in the document, or otherwise, did he make any alternative disposition of his property, which is indicative that he did not intend the language used to constitute a condition. There is an abundance of evidence pointing to the absolute character of this instrument and nothing in the record to show why decedent would have intended his will to be conditional. There is little question that Del Val died in the belief that his estate would go to the Disons under the document he entrusted to Mrs. Dison.

Appellant contends that decedent made a declaration to a friend, Stephan Kun, after he was released from the White Memorial Hospital which is inconsistent with the absolute character of the will. Mr. Kun testified that decedent saw him one day and said, "Well, Steve I did it." Not understanding what he meant, he questioned him and Del Val answered, "I put my money in Western Federal." At that time Kun then told him it "was very advisable for him to have a will drawn out legally by law . . . ", in response to which the decedent laughed or smiled and said, "Sure, I should." It is not too clear from the language itself what impression the decedent intended to convey and his statement is subject to a variety of interpretations. It is the function of the trial court to pass upon the evidence and the weight to be given to it and if its interpretation thereof is reasonable a reviewing court will not disturb the trial court's determination in the matter. The response, "Sure, I should" does not necessarily imply that the decedent did not have a will. Many persons are reluctant to discuss matters relating to death or the disposition of property in that event. Others feel that wills and to whom and how they intend to leave their property are matters of such a personal nature that they have no wish to discuss them with others, even close friends. This is often true, particularly when the person has already executed such a document and does not wish to disclose to whom he is leaving his money. Del Val, believing he had already drawn a will to his satisfaction, may have felt no occasion to discuss it with Kun other than to agree that he "should" execute such a document in order to avoid further discussion. Obviously the trial court was not impressed with this bit of testimony and was justified in not believing such a declaration to be inconsistent with the absolute character of the will. The fact that Del Val

executed no subsequent will seems to negate any such inference in the testimony of the witness Kun.

In the light of all the circumstances surrounding the execution and delivery of the document in question, the decedent's subsequent conduct and the document itself, the trial court's construction of the language in question to be merely a narration of an approaching event inducing or motivating the making of the will is entirely reasonable. It is clear from the record that a fair inference arising from the use of the phrase "if there is anything happen to me tonight" is that the decedent intended it to serve only as a reason why he was making the will at that time to become effective whenever he might die.

We find the will to be absolute. The trial court did not commit error as a matter of law in upholding the admission to probate and the evidence is sufficient to support the finding that the document was not a conditional will.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.