ALEX M. FERGUSON V. ALVAH FERGUSON ET AL.

No. 4757.   Decided December 9, 1931.
Motion for rehearing overruled January 6, 1932.
(45 S. W., 2d Series, 1096.)

*Thos. S. Henderson,* of Cameron, *F. L. Henderson,* of Bryan, *Ratliff & Ratliff,* of Haskell, *Jesse F. Holt,* of Sherman, and *W. L. Scott,* of Fort Worth, for plaintiff in error, Alex M. Ferguson.

*W. H. Murchison,* of Haskell, for Joe Lee Ferguson.

The will in question is not contingent. The expression, "I am going on a journey and may never come back alive so I will make this will" is her reason for making it, and she does not, in any sense, make it contingent on her death during the journey. The expression, "I expect to make changes if I live," instead of showing the will contingent, a mere temporary makeshift to serve a temporary purpose and which was automatically revoked by her return alive, shows that she expected her will not to be contingent on her death during the journey, but would survive her return alive. Tarver v. Tarver, 9 Pet., 174, 9 L. Ed., 91; Kelleher v. Kernan, 60 Md., 447; Cody v. Conly, 27 Gratt., 321; Forquer's Estate, 66 Atl. (Pa.), 92, 8 Ann. Cas., 1146; McMerriman v. Schiel (Ohio), 140 N. E., 600.

Before a will will be held contingent or conditional, it must clearly appear in the will itself that the testator meant for it to be conditional. The presumption is against the will being contingent. Eaton v. Brown, 193 U. S., 411, 48 L. Ed., 730; Haupt v. Michaelis, 231 S. W., 706; Likefield v. Likefield, 82 Ky., 589.

*Chandler & Chandler,* of Stephenville, and *Black & Graves,* of Austin, for defendants in error.

That said instrument by its express terms was conditioned to take effect as a will on the contingency only that the testatrix "may never come back alive," from a specific journey upon which she was going; having expressly stated that "I expect to make changes if I live," it was a conditional or contingent will and was automatically revoked when the testatrix did come back alive.

The instrument was a conditional or contingent will, and this theory is supported not only by the literal and grammatical construction of the language used, but by the further expression used in the hospital item, that "if I live I expect to have it done myself"; and further by the vague, indefinite and uncertain character of this and other items, disclosing as a whole that the instrument was intended as a temporary makeshift to serve only the temporary purpose of the specific journey that testatrix was "going on." Vickery v. Hobbs, 21 Texas, 571; Phelps v. Ashton, 30 Texas, 345; Dougherty v. Holscheider, 88 S. W., 1113; Walker v. Hibbard (Ky.), 215 S. W., 800; Morrow's Appeal, 116 Penn., 440, 2 Am. St. Rep., 616; Todd's Will, 2 Watt & S., 145 (Pa.); Magee v. McNeil, 41 Miss., 15, 90 Am. Dec., 354; Maxwell v. Maxwell, 3 Metcalf (Ky.), 101; Hamilton's Estate, 74 Pa., 69; Dougherty v. Dougherty, 4 Metcalf (Ky.), 25; Robnett v. Ashlock, 49 Mo., 171.

On the question of intent of testatrix. Masterson v. Harris, 107 Texas, 78; Leader v. Duffey, 13 App. Cas., 294; 1 Alexander on Wills, pp. 116-120; 28 R. C. L., 166.

*Joe J. Johnson, Hugh H. White* and *Clay Cooke,* as amicus curiae.

MR. JUSTICE AMERMAN delivered the opinion of the court.

The facts of this case are embraced in the majority opinion of the Court of Civil Appeals reported in 288 S. W., 833, and need not be repeated here.

There is only one question in this case: Was the will of Mrs. Morton a contingent or a conditional will, intended by her to take effect only upon the happening of her death during a contemplated journey?

Her will, written entirely in her own handwriting, reads as follows:

"LAST WILL OF

Telephone No. 53                                    Postoffice Box 92.

KATE F. MORTON

Haskell, Texas, May 5th, 1924

I am going on a journey and I may never come back alive so I make this Will, but I expect to make changes if I live.

First, I want a Hospital built in Haskell in memory of my husband Francis Marion to cost $50,000 (Fifty Thousand Dollars), if I live I expect to have it done myself.

I will to Jasper C. Lawson, some piece of property or money of the value of Five Thousand 5000.

To Nannie Darr, my husband's sister, 1000 dollars in money or property; to my brothers Alvah and James I will (100) One Hundred Dollars each.

To Annie Kate Ferguson, a section of farming land 640 acres. The residue of property to be divided between my brothers Joe Lee and Alex M. Ferguson.

To Zelma Ballard, I will her the note I have on Curtis Ballard, her husband.

I want all of my just debts paid. I owe W. H. Murchison for his services since my husband died.

Love and good will to all my friends.

KATE F. MORTON."

The decision of this case must mainly turn upon the construction to be placed upon the first sentence which reads:

"I am going on a journey and I may never come back alive so I make this will, but I expect to make changes if I live."

And the second sentence which reads:

"First, I want a Hospital built in Haskell in memory of my husband Francis Marion to cost $50,000 (Fifty Thousand Dollars), if I live I expect to have it done myself."

There is no express provision that the will shall be contingent upon the death of the testatrix upon the particular journey referred to. If this intention existed in the mind of the testatrix and was carried into the will, it must be gathered mainly from a construction of the two sentences mentioned. The language employed by the testatrix in these two sentences does one of two things: It either clearly shows her intent, or it expresses it ambiguously. We think its abiguity is clearly apparent. This being the case, the court is guided at the outset by well-recognized rules of construction in arriving at the testatrix's intent. Briefly these rules are as follows:

1. The fact that testatrix left a will implies that she did not intend to die intestate. Alexander on Wills, vol. 1, p. 123, sec. 105.

2. A will is construed to be a general and not a contingent will unless the intention to the contrary clearly appears either expressly or by necessary implication from a reading of the language of the will as a whole. Eaton v. Brown, 193 U. S., 411; 48 L. Ed., p. 730; 40 Cyc. 1082-3.

3. If the event mentioned in the will merely indicates the inducement which caused the testatrix to make the will, her intent to make it contingent is not apparent, the will is entitled to probate as a general will. 28 R. C. L., p. 166.

4. If the will is open to two constructions, that interpretation will be given it which will prevent intestacy. Alexander on Wills, supra.

■ With these rules of construction in mind what do we find to be the intention of testatrix as disclosed by the will? She designates the instrument as her "Last Will" and "this Will." She states as the occasion for writing any sort of will "I am going on a journey and I may never come back alive so I make this Will" and then adds: *"but I expect to make changes if I live."* (Italics ours). She then mentions the $50,000.00 to build a hospital in Haskell in memory of her husband and adds: "if I live *I expect to have it done myself."* (Italics ours). It is strenuously argued by the contestants and indicated by the opinion of the Court of Civil Appeals that the fact that testatrix declared her intention to make changes in her will upon her safe return from the journey of itself made it a conditional will. If this reasoning were sound, any absolute will would be a conditional will if the testator saw fit to say "Upon the hap-

pening of certain contingencies, I intend to change this Will." To hold a will contingent it must reasonably appear that the testator affirmatively intended the will not to take effect unless the given contingency did or did not happen, as the case might be. It has never been held, as far as we have been able to discover, that a will is contingent because the testator expressed in the instrument the right which he always has to change the will.

In an opinion the Court of Appeals of Maryland reversed the Orphans Court for refusing to probate a will beginning: "In anticipation of my departure from the City of Baltimore and to provide for possible contingencies," and ending "reserving to myself * * * the right to dispose of the same otherwise if I deem proper." In its opinion the court said:

"The fact, in the present case, that the maker was about taking a trip away induced him to make the paper then; but because he states his reason, viz., that it was in anticipation of the trip that he makes the provision against 'possible contingencies,' does not warrant us in holding that the will was wholly contingent in respect to its operation, and that because he did not die during that trip, but returned and died afterwards at home, leaving this paper uncancelled, it can have no operation. From the moment he executed the paper he must have intendeed it to operate if he died afterwards and before starting away. It could not have had reference to death occurring *only* during that absence. * * * Clearly he intended that paper to express his purposes respecting the property covered by it; and to control its disposition in the event he should die *without making some changes*, (Italics ours) or other provision. He intended it as an effective provision, if he did nothing else. The trip might result fatally to him. Hence the incentive to do then what he did do, and what he had hitherto neglected. He states the inducement to action without intending to give it the effect of making the paper contingent. This view is sustained by adjudged cases which, in some instances, in expression, are singularly analogous." Kelleher v. Kernon, 60 Md., 441-446.

Mrs. Morton did not say in her will: "This Will is to be effective if I died on this trip." She refers to it as her "Last Will" and makes the following bequests:

1. $50,000.00 for a hospital.
2. To Jasper C. Lawson "some piece of property or money of the value of $5,000.00."
3. To Nannie Darr "1,000.00 in money or property."
4. To Alvah and James $100.00 each.

5. To Annie Kate Ferguson a section of land.
6. To Zelma Ballard, her husband's note.
7. The residue to Joe Lee and Alex M. Ferguson.

■ This was the "Will" in which she "expected to make 'changes'" if she "lived." The making of changes in a written paper called a will presupposes the continued existence of the paper as a will. One cannot "change" something that has ceased to exist. Mrs. Morton was going on a journey; she did not want to die intestate. She wrote unskillfully a document and called it her will, and notified the world that she expected to change it if she "lived"; not that if she returned alive from the trip she intended to die intestate unless she wrote another will, or that upon her safe return this will would be null and void. It may be certainly said that if the clause, "I expect to make changes, if I live" were not in the will, the recital that she was about to take a journey from which she might not return alive, would not make it a contingent will, but under the great weight of authorities, this reference would be held to be only the inducement or the occasion for making the will and it would be entitled to probate. The declaration by the testatrix that she "expected" to make "changes" is not equivelent to declaring the will null and void if she survived the journey or that it was contingent upon her death on that trip. This declaration indicates that she had published a will, the details of which did not exactly suit her and she proposed to change these details and possibly put the document in better legal form.

Looking at the will, what are the "changes" that testatrix possibly had in mind. She desired to build the hospital herself, in which case, as a matter of law, this legacy would have been adeemed and she would want to "change" the $50,000.00 bequest. The bequest to Jasper Lawson and Nannie Darr could be made specific as to some definite pieces of property. The legacy of a nominal sum of $100.00 each to her brothers Alvah and James could be changed so as to prevent their being almost cut off from her bounty as she deliberately did by her will. These changes could have been in her mind, or an entirely different will could have been written. If we construe the first clause in her will, "I am going on a journey and I may never come back alive so I make this will," to relate merely to the inducement or occasion for making a will, then we have a will which declares in effect: "I am making this my Will because I am going on a journey from which I may not return; but at some later date I expect to make certain changes in this Will." This would be a general will and she would not die intestate

upon her return, even if she failed to make the "changes" she may have had in mind.

An examination of the will indicates that her main desire was to dispose of her property herself and not to die intestate. The fact that she referred to the journey, indicates that she was thinking of the necessity for a will if she did not desire to die intestate. Her will indicates that she had fixed notions as to who was to receive her property, and in one paragraph she exhibits a fixed intention that her two brothers, Alvah and James, shall have but the nominal sum of $100.00 each.

In the case of Eaton v. Brown, 193 U. S., 412, 48 L. Ed., 730, in construing a similar will, Justice Holmes holds that the character of the bequests made may be looked to in deciding whether a contingent will was intended. In this case, as in the Morton will, bequests were made to charity and to a foster son. The Supreme Court of the United States said:

"But the two gifts are both of a kind that indicates an abiding and unconditioned intent,- -one to a church, the other to a person whom she called her adopted son. The unlikelihood of such a condition being attached to such gifts may be considered."

In this case it is hard to believe from reading the entire will that Mrs. Morton bequeathed money to a hospital, named the recipients of her bounty, deliberately cut off two brothers with $100.00 each, and then intended that the whole will should fail and that she should die intestate, if she returned alive from a short visit of a few weeks' duration. If this construction is placed on the will the testatrix's expressed intention to leave her estate as expressed in the will must give way, and the entire property must descend under the laws of descent and distribution, a result that is certainly not clearly indicated by the will. This result would have to be brought about by construing doubtful language in the will into a certainty that the will was shown by the language to have been intended as a contingent will.

These conclusions do not conflict with Dougherty v. Holscheider, 40 Texas Civ. App., 31, 88 S. W., 1113; Vickery v. Hobbs, 21 Texas, 571, or Phelps v. Ashton, 30 Texas, 345, and in our opinion the conclusion reached by a majority of the Court of Civil Appeals, results from an incorrect application of the principles announced in those cases to the language of Mrs. Morton's will. It was said in the Dougherty case:

"The current of modern authority, however, seems to be that, if the happening of the event is merely referred to as

giving the reason or inducement for the making of the will, it be held unconditional, but if it appears that the tetator intended to dispose of his property in case of the happening of the named event, then it will be held to be conditional. The rule is thus stated in the case of French v. French, 14 W. Va., 459: 'It seems that it is now an established principle that, while a person may make a conditional will, his intention to do so must· appear clearly. The question is whether the contingency is referred to as the reason or occasion for making the disposition, or as the condition upon which the disposition is to become operative.' * * *

"In most of the cases holding Wills dependent on the happening of the condition named, the words 'if I never get back,' referring to a certain journey, or 'should antying happen to me,' referring to a particular time or event, were used."

In the Dougherty case the language used in the will to make it contingent was: "In case antying should happen" as a result of an operation. In the second letter the words are: "in case anything happened to me." In the Ashton case the language was: "in case of my death while absent." In the Vickery case an express condition limiting the operation of the will to the existing illness was under consideration. The great weight of authority is to the effect that the condition must be clearly expressed either by appropriate language or by necessary implication.

■ It seems not to be open to argument that had Mrs. Morton's will contained the sentence "I am going on a journey and may never get back alive, so I make this will," and without the other declarations as to future "changes" and the reference to having the hospital built herself, that the will would have been unconditional. In fact the Court of Civil Appeals entertained this view as shown by its opinion as follows:

"We feel quite sure that if this will had stated, 'I am going on a journey and may never get back alive, so I make this will' that it would have been an unconditional will, but after using the words quoted she says, 'But I expect to make changes if I live' and following this she names the hospital item and says further, 'If I live I expect to have it done myself.' "

There are no express words expressing a condition in Mrs. Morton's will such as: "If I die on this trip," "If anything happens," or the like. Not containing the words of condition, her will does not fall within the rule announced in the Dougherty case where the words were "in case anything should happen." The Court of Appeals then necessarily based its opinion

mainly upon the language in Mrs. Morton's will with respect to her expected changes. We do not consider that the language in her will in which she says she expects to make changes and her reference to the building of the hospital, if she lived, are sufficient, when construed with the rest of the will, to supply the missing language making the will contingent, under the Dougherty case, and similar authorities.

It will be manifestly impossible to embody in this opinion a discussion of the many authorities cited in the briefs and argument, but in our opinion the great weight of authority is in accordance with the conclusions reached in this opinion. From the conclusions reached it results that the judgment of the Court of Civil Appeals must be reversed and the judgment of the trial court affirmed and it is so ordered.

Mr. Chief Justice Cureton dissenting.