## MRS. L. D. BURKE ET AL. V. FRED C. JACKSON.

No. 6675. Decided July 15, 1936.
(95 S. W., 2d Series, 1296.)

*Baker, Botts, Andrews & Wharton* and *S. H. German,* of Houston, for plaintiff in error.

*Adolph Seidemann,* of New Braunfels, *Stevens & Stevens* and *Bailey & Blum,* all of Houston, for defendant in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This case originated in county court by the filing by Benjamin A. Denney of an application on behalf of Mrs. L. D. Burke to probate the will of Mrs. Mary B. Jackson. Contest was filed by Fred C. Jackson, her surviving husband. Probate was denied. Appeal was heard in the district court, where probate was again denied. On appeal to the Court of Civil Appeals the same result was reached except that the affirmance of the district court's judgment denying probate was by a divided court. 65 S. W. (2d) 430. The will, omitting the signature and date, reads:

"To Mr. Denney

Mr. Jackson and I Mrs. Jackson are going to Port Arthur

for 2 days and if any thing should happen to us I want you (Mr. Denney) to see that my mother Mrs. L. D. Burke at 6910 Ave. N. gets all of my real estate & all the life insurance and all that I leave on earth. Please see that she does."

The original of the foregoing copy is wholly in the hand-writing of Mrs. Jackson. Mrs. Burke, her mother, had resided with Mr. and Mrs. Jackson since their marriage. The Jack-sons were childless and had never had any children. At the time of Mrs. Jackson's death she and her husband had been married about thirty years.

Benjamin A. Denney, the attorney who filed the application for probate, is the Mr. Denney to whom the instrument is addressed. At the time it was written he had represented Mr. and Mrs. Jackson for about ten years. He had not seen the original instrument until it was offered for probate, it having remained in Mrs. Burke's possession. There is no evidence that either Mrs. Jackson or her husband owned any separate property, their entire holdings being the community estate which they had accumulated during coverture. The record is silent as to who made her the beneficiary of a policy or policies of life insurance. The insurance is referred to as being in addition to the property then owned. It could pass by will only in case of the death of both Mrs. Jackson and the insured who made her his beneficiary. Nothing in the record suggests that the conjugal relationship between Mr. and Mrs. Jackson had ever been other than ideal, or that anything would impel her to make her mother the beneficiary of a will leaving her all she had "on earth" without a bequest of any character to her husband, except the desire to make provision for the continued care of her mother in the event something happened to Mr. Jackson, as well as herself that would result in the death of both.

The trip to Port Arthur was made by the Jacksons and was uneventful so far as the record is concerned. Nothing happened to them. The contingency stated in the will, "if anything should happen to us" did not occur. About eleven months after the trip was made Mrs. Jackson died in a hospital in Houston. Her death had no relation to the Port Arthur trip.

The sole question presented here is whether the instrument in question was such that it was operative as a will without the happening of the contingency. In other words, did Mrs. Jackson at the time she wrote the instructions to Mr. Denney contemplate making an absolute will?

The courts below reached the conclusion she did not; that

the writing shows on its face that its becoming effective as a will was contingent, and that it failed to become effective because the contingency did not occur. We think the conclusion is correct and inescapable in the light of the wording of the instrument and the circumstances surrounding its execution.

The expression, "If anything should happen to *us*" (italics ours), could have but one meaning in the connection in which it was used. Paraphrased it is this: "If anything should happen to us which results in the death of both Mr. Jackson and myself, you, Mr. Denney, are to see that my mother gets all I have and the life insurance."

The thing that is to happen must happen to both if the will is to become operative as such. There is no suggestion in the language considered alone or in connection with the surrounding circumstances, to indicate Mrs. Jackson's intention that during her husband's lifetime anyone should become seized and possessed of the property which he and she had been accumulating together for thirty years. Only in the event of his death as well as her own was this to happen.

A similar testamentary intention is manifested in the language of the contingent clause construed in the case of In Re Bittner, 171 N. Y. S., 366. The husband, Bittner, before embarking on a voyage made testamentary provision that, if any misfortune should happen to him and his boy, Herman John, on a voyage across the Atlantic to New York, "that if we both should lose our life in this critical time of European war," his wife should be his sole heir. Both arrived safely. Later the husband died. The court in holding the will contingent gave controlling effect to the language of the testator that something must happen to both him and his son to make the instrument operative as a will, saying:

"The most persuasive feature of the paper is that the gift is dependent not only upon the death of the decedent during the proposed voyage, but upon the death also of his son."

In Corpus Juris, Vol. 68, p. 631, the rule is stated that—

"Whether a will is to be regarded as contingent turns upon the point whether the contingency is referred to merely as the occasion of or reason for making the will at the time it is made, or is referred to as the reason for making the particular disposition of property which is provided for, and is intended to specify the condition upon which the will is to become operative, it being in the latter case that the will is contingent."

In the notes referred to in the text in connection with the rule many cases are listed under the respective headings;

"Language held to make will contingent" and "Language held not to make will contingent," in which the clauses in question are set out. An examination of the cases discloses generally that in those in which the will has been held absolute when the language used expressed a contingency upon which it was to become operative, other language was used by the testator as a part of the contingent clause, or elsewhere in the instrument, indicating his intention to make an absolute will; or the surrounding circumstances indicated such intention.

No facts are disclosed by the record tending to show that Mrs. Jackson's intention was to make an absolute will.

The dissenting opinion which ascribes to her such intention, refers to the fact that Mrs. Burke retained possession of the instrument after Mrs. Jackson's return and that the testatrix did not require its destruction. This fact is without significance unless it be conclusively assumed that Mrs. Jackson intended making an absolute will. If it was her intention to make disposition of her property to her mother only in the event something happened to both Mr. Jackson and herself, there was no occasion for its destruction since nothing happened.

The case of Ferguson v. Ferguson, 121 Texas, 119, 45 S. W. (2d) 1096, 79 A. L. R., 1163, discussed in both the majority and minority opinions has no controlling effect here. There the testator unequivocally stated she was making a will and the occasion for her doing so. "I may never come back alive," she wrote, "so I make this will." In keeping with this preliminary declaration she wrote it, making several individual bequests, expressing her desire that her just debts be paid, and bequeathing the residue of her property to two of her brothers. The disposition of none of her property was made contingent upon anything's happening to her. She expressed her wish with respect to the building of a hospital, and stated in effect that she expected to have it done herself and to make changes if she lived. No disposition of any of her property was conditioned upon whether she returned alive, or upon any other contingency. The will was clearly unconditional and absolute with respect to the disposition of the testatrix' property.

The only authority cited in the dissenting opinion in the present case as sustaining the view there expressed is Eton v. Brown, 193 U. S., 411, 48 L. Ed., 730, 24 Sup. Ct., 487. One clearly distinguishing feature in the instrument there involved is that the contingency expressed was with respect to the testator alone, being "If I do not return." The court in holding

the will absolute states that it need not consider whether if the will had anything to qualify the contingency it would be impossible to get away from the condition. Two circumstances particularly are pointed out as indicating a qualification of the contingency; the first, that the testatrix refers in the instrument to the fact that all she has is her own hard-earnings, and states she proposes to leave them to whom she pleases; and the second, that one of the two bequests is to a church and the other to an adopted son. These circumstances are pointed out by the court as indicating "an abiding and unconditioned intent" to make an unqualified disposition of her property, and are pointed out as importing into the language such intention.

The language used by Mrs. Jackson forbids that any such meaning be imported into it. It contains nothing to qualify the contingency so as to make it appear to be merely an occasion for her making an absolute will. The occasion was the contemplated trip and the disposition of her property to her mother as sole legatee, and was conditioned upon something's happening to both Mr. Jackson and herself.

The only other cases cited in support of the contention that the will is absolute are In Re Tinsley, 187 Ia., 23, 174 N. W., 4, 11 A. L. R., 826; In Re Forquers' Estate, 216 Pa., 331, 66 Atl., 92, 8 Ann. Cas., 1146, and McMerriman v. Schiel, 1080 St., 334, 140 N. E., 600.

The McMerriman case appears to be relied upon because of the court's statement that it should if possible treat the contingency clause there involved as an inducement for making the will, and not to treat it as a condition to its operation unless the words or the surrounding circumstances clearly showed that it was so intended.

The rule is not applicable in the present case since both the language and circumstances clearly show the happening of something to both Mr. and Mrs. Jackson to be the condition upon which the disposition of the property there made should become operative. Furthermore, the instrument considered in the McMerriman case was headed "My Last Will," and was kept by the testator himself "with his personal possessions in a safe for more than a year after its execution, up to the time of his death." These circumstances were pointed out by the court as reasons for its construction of the language of the instrument, which it designated as "far from being explicit," and for holding the trip there in contemplation was merely an occasion for making an absolute will.

The same character of surrounding circumstances were

present In Re Forquers' Estate, supra. The will when made by the husband "was committed to the keeping of his wife while absent on the journey * * *," and "On his return * * * he made inquiry of his wife for the will, read it to her, and then placed it in his office safe where it remained, except when taken out by him on occasion for examination * * *."

While the case was not turned upon the circumstances referred to in the foregoing language of the opinion, the court points out as controlling the fact that part of the contingent clause provides that "should anything befall me while away, *or that I should die,* then in that event," the property was to be set over to his wife (italics ours); and in this connection says:

"We may well suppose that the testator by the disjunctive expression which follows, 'or that I should die,' meant to add something to what he had already said * * *. By the use of the disjunction 'or' the provision which follows excludes the thought that it immediately preceded, and has, we think the same force and meaning as if it stood alone."

The contingency clause in Tinsley's will in full reads:

"In case of any serious accident, after my just debts are paid, I direct that my aunt, Miss Mary E. Clark, take charge of my estate for disposal as she sees fit."

A casual reading of the clause is sufficient to show that the case could not be helpful here as authority. The difficult question for the court to decide there was whether the instrument could be considered a will. In discussing the question of whether it was contingent the court says:

"In other words, counsel would have us construe the writing as if it read, 'I am about to make a trip to California, and if, by reason of any accident, I do not live to return to my home, then and in that event, I dispose of my estate as follows.'"

In other words, it would have been necessary for the court, had it held the will to be contingent, to read into the instrument what was in effect expressly stated by Mrs. Jackson in the instruction written by her to Mr. Denney.

The court says further in the Tinsley case immediately following the quoted statement, and correctly, "But to do this the court must make a will for the testator expressing an intent which is not to be found in the writing which he executed."

In the present case the language used by Mrs. Jackson clearly indicates that she intended her mother should be the sole beneficiary of her property and insurance if anything

happened to Mr. Jackson and herself. The surrounding circumstances disclose no reason for imputing to her a different intention. We think her meaning can be no more clearly expressed than in the brief majority opinion of the Court of Civil Appeals in which it is said:

"It seems plain to us that in the clear note here involved Mrs. Jackson merely meant the disposition therein specified to be effective in case anything happened to both Mr. Jackson and herself on that contemplated journey to Port Arthur; she unequivocally makes the whole thing conditional upon the happening of that simply named contingency, and we think nothing more can be read into nor anything less deduced from it."

As nothing happened to them, the instrument never became operative as a will and the courts below were correct in denying it probate.

The judgment of the Court of Civil Appeals affirming the trial court's judgment is affirmed.

Opinion adopted by the Supreme Court July 15, 1936.