In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00033-CV


______________________________







IN THE ESTATE OF CHARLES ORISE FUSELIER, DECEASED








 


On Appeal from the County Court at Law


 Bowie County, Texas


Trial Court No. 08C0650-CCL




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss


Dissenting Opinion by Justice Moseley


O P I N I O N


 The purported joint will of Charles Orise Fuselier and his wife, Dena Fuselier, was dated
March 21, 2007, and was in Dena's handwriting, except that it also bore three signatures: those of
Dena, Charles, and Rebecca W. Miller, a notary public. The document names Kayla A.
Fuselier--Dena's natural daughter adopted by Charles--as the sole devisee, and makes no mention
of Nicole Fuselier and Cherise Fuselier, Charles' two daughters from a prior marriage. After Charles'
death July 15, 2007, Dena applied to probate the March 21, 2007, document as Charles' will. Nicole
contested Dena's application for probate.

 The trial court granted Nicole a summary judgment. In doing so, it ruled that the will was
invalid both because it was not properly witnessed under Section 59 of the Texas Probate Code and
because it is an unfulfilled contingent will. On appeal, Dena contends that Nicole's summary
judgment fails on both grounds.

 We  reverse  the  summary  judgment  and  remand  the  case  for  further  proceedings
because (1) Dena may qualify as a witness to the will and (2) the will's language is ambiguous and
requires extrinsic evidence to construe it.

(1) Dena May Qualify as a Witness to the Will

 Dena contends that Nicole failed to establish as a matter of law that the will was invalid
under Section 59 of the Texas Probate Code due to the lack of attesting witnesses. Dena argues that
the  will  was  properly  witnessed  because  Dena's  signature  on  the  will  can  constitute  both  a
co-testator's signature and a witness' signature. We agree. 

 When reviewing a summary judgment, the question on appeal is whether the summary
judgment proof establishes that the movant is entitled to summary judgment as a matter of law.
French v. Gill, 252 S.W.3d 748 (Tex. App.--Texarkana 2008, pet. denied) (citing Gonzalez v.
Mission Am. Ins. Co., 795 S.W.2d 734, 736 (Tex. 1990)). All conflicts in the evidence are
disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to any genuine
issue of material fact are resolved in favor of the nonmovant. Limestone Prods. Distrib., Inc. v.
McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546 (Tex. 1985).

 If a will is not entirely in the testator's handwriting, it must be attested by two or more
credible witnesses above the age of fourteen who sign the will in the presence of the testator. Tex.
Prob. Code Ann. §§ 59(a), 60 (Vernon 2003); Jones v. Whiteley, 533 S.W.2d 881, 883 (Tex.
App.--Fort Worth 1976, writ ref'd n.r.e.). It is well established law that "credible witness" means
"competent witness." Triestman v. Kilgore, 838 S.W.2d 547 (Tex. 1992) (citing Lehmann v. Krahl,
155 Tex. 270, 285 S.W.2d 179, 180 (1955)). A witness to a will serves to prove the will was
executed with the formalities and solemnities and under the circumstances required to make the will
valid. See Tex. Prob. Code Ann. § 84(b) (Vernon Supp. 2008). Proving a will requires the sworn
testimony  or  affidavit  of  one  or  more  of  the  subscribing  witnesses.  Tex.  Prob.  Code  Ann.
§ 84(b)(1) (Vernon Supp. 2008); In re Estate of Teal, 135 S.W.3d 87, 90 (Tex. App.--Corpus Christi
2002, no pet.). 

 There  is  no  Texas  precedent  prohibiting  a  co-testator  from  acting  as  a  witness  to
another co-testator in the same joint will. Further, a person can be a witness to a will without
intending to be a witness. Teal, 135 S.W.3d at 90.

 In the case of In re Estate of Teal, the trial court held a notary was a subscribing witness to
a will, despite her stated intentions to the contrary. In Teal, neither of the two signing witnesses
could be found to prove a will, so the proponent argued that the notary, who signed and stamped the
will, had acted as a subscribing witness. Id. The notary did not intend to be a witness to the will,
but the court held that her actions were more consistent with the actions of a witness "because there
is no requirement that a will be notarized, [the notary's] signature served no purpose other than as
a witness." Id. at 90-91.

 In this case, it is undisputed that the notary's signature qualifies as a witness' signature. The
issue is whether Dena's signature qualifies as a witness' signature. It is undisputed that Dena's
signature served the valid legal purpose of executing the will as a co-testator, that is, of executing
her own will. Applying the rationale of In re Estate of Teal, however, if Dena qualifies as a
competent witness under Section 59 of the Texas Probate Code, her signature may serve as a witness'
signature, regardless of her intended purpose in signing the will. There is no evidence before us that
at the time Dena signed the will, she was incompetent, under the age of fourteen, or outside the
presence of the testator. Therefore, the evidence before us is insufficient to prove as a matter of law
that the will is invalid under Section 59 of the Texas Probate Code. This rationale for the summary
judgment is invalid.

(2) The Will's Language Is Ambiguous and Requires Extrinsic Evidence to Construe It

 Dena also contends that Nicole failed to prove as a matter of law that the will was an
unfulfilled contingent will. (1) We agree, because the will is ambiguous.

 The language of a will may clearly show the testator's intent--be it contingent, conditional,
or otherwise--or it may express the testator's intent ambiguously. Ferguson v. Ferguson, 121 Tex.
119, 45 S.W.2d 1096, 1097 (1931). The determination of whether a will is ambiguous is a question
of law. Harris v. Hines, 137 S.W.3d 898, 903 (Tex. App.--Texarkana 2004, no pet.); Hurley v.
Moody Nat'l Bank of Galveston, 98 S.W.3d 307, 310 (Tex. App.--Houston [1st Dist.] 2003, no pet.).

 A contingent will is a will that will take effect only upon the happening of a specified
contingency. Bagnall v. Bagnall, 148 Tex. 423, 225 S.W.2d 401, 402 (1949); In re Estate of Perez,
155 S.W.3d 599 (Tex. App.--San Antonio 2004, no pet.). We must determine whether the
happening of the contingency is a condition precedent to the operation of the will, or whether the
arguably contingent language was only a statement of the motive or inducement that led to the
preparation and execution of the instrument. Perez, 155 S.W.3d at 601; Bagnall, 225 S.W.2d at 402. 
We may also examine the character of the bequests in determining whether the testator intended a
contingent will. Ferguson, 45 S.W.2d at 1098. The operation of a contingent will is defeated by the
nonoccurrence of the contingency. Bagnall, 225 S.W.2d at 402.

 The body of the purported joint will of the Fuseliers is short:

 In the event of our deaths, Dr. Charles O. Fuselier and Dena Fuselier; parents of
Kayla A. Fuselier, leave all our real property; bank accounts; stocks and personal
items to Kayla Ann Fuselier.

 

 Dallis Parker and Perry Parker are Kayla's legal God parents and will manage our
estate for [illegible] Kayla A. Fuselier until she is 18 years of age.


 In the case of a single will, the phrase "if anything should happen to us" has been held to
create a contingent will. Burke v. Jackson, 127 Tex. 623, 95 S.W.2d 1296, 1297 (1936) (emphasis
added). The present case is distinguishable from Burke, because the present will purports to be a
joint will while the testamentary instrument in Burke was only one person's will.

 Here, the phrase "in the event of our deaths" is susceptible to different interpretations
depending on whether the interpreting court emphasizes the singular "event" or the plural "deaths"
and whether the language can be interpreted only jointly ("our deaths") or can be understood as
speaking for each testator at the time his or her will is probated--Charles dies first and his will is
understood to say "at the time of my death." The will could reasonably be interpreted to require the
simultaneous deaths of both co-testators--the singular "event of our deaths." It could also
reasonably be interpreted to require the eventual deaths of both co-testators--when "our deaths" have
both occurred. Also, as a by-product of the document's brevity, we see nothing that would exclude
an interpretation allowing the will, as that of the first to die, to act at that time--being understood
as "upon my death, my property described in this will shall go as set out herein." It has been
suggested that the joint will contemplates only that it will be effective after both testators have died,
based on the operative language of the will and the fact that no provision is made for a surviving
spouse to either receive anything under the will or to manage anything during Kayla's minority. 
While the suggested reading might be reasonable, it is by no means the only reasonable reading of
the spare language of this document.

 For these reasons, we hold that the language of the will is ambiguous and the intent of
Charles is unclear from the bare language in the document. Therefore, the summary judgment
evidence is insufficient to prove as a matter of law that the will is an unfulfilled contingent will.
Accordingly, we reverse the trial court's granting of summary judgment on the issue of the meaning
of the document and remand the case for a will construction in light of extrinsic evidence as to
Charles' intent.

 We reverse the summary judgment and remand this case to the trial court for further
proceedings in accordance with this opinion, to consider evidence as to Dena's qualifications as a
witness and as to Charles' intent.


 Josh R. Morriss, III

 Chief Justice





DISSENTING OPINION



 I must disagree that a person can simultaneously serve both the role of a co-testator in a joint
will and as a witness to that same will.

 The majority relies on the rationale employed in In re Estate of Teal, 135 S.W.3d 87 (Tex.
App.--Corpus Christi 2002, no pet.), as the primary basis for determining that the co-testatrix here
could qualify as a witness to her husband's will. Although the majority ably and accurately sets out
the facts in Teal, some are repeated here. Teal, the testator, had drafted his own two-page will and
had requested Anzaldua to act as the notary. On the back of the second page were two signatures,
with the word "witness" hand-printed beneath each; one of the signatures was illegible and the other
purported to be a "Jane Martinez." Anzaldua testified that she had questioned Teal about the content
of the will and partially discussed its consequences and that she had first determined that he was
signing the will of his own free will; she then saw Teal and the two witnesses sign and then she,
herself, signed the will and affixed her notary seal. Anzaldua specifically maintained that she had
intended to sign the will solely "to witness to the signature on the will," not as "a subscribing
witness" to the will. After Teal died, neither of the two persons shown on the will as witnesses could
be located. Needless to say, the will contained no self-proving clause. The Corpus Christi court
ruled that, despite her protestations about her role in the will signing process, Anzaldua

[s]igned the will in the presence of the testator. Because there is no requirement that
a will be notarized, Anzaldua's signature served no purpose other than as a witness.
Her actions, in questioning the testator about his intentions and the contents of the
will are more consistent with the actions of a witness, than with the actions of a
notary public. 


Teal, 135 S.W.3d at 91-92.

 In Teal, if you remove Anzaldua's role as notary and do not consider her a witness, her
presence and her signature served no purpose. In our circumstance, however, Dena's presence and
her signature had a center role in these proceedings; she was acting as a co-testatrix of the joint will
of her husband. There is no evidence that she assumed the role of a witness to anything or that her
husband, the decedent, considered her as playing that part; she was a participant to the act and not
a witness to it. Her presence was not surplus; it would have been required if she were to be bound
to the terms of the will herself. Her presence and her signature served a purpose: co-testatrix. Suppose that the joint will had been typewritten and not in Dena's handwriting (thereby
making it a non-holographic will on her part). Suppose, further, that both of the joint testators had
died simultaneously. Given that circumstance, would we now determine that when the joint will is
presented in each of their separate probate actions that each could have served as a witness for the
other? Unless that answer could be in the affirmative, we must determine that Dena could not
simultaneously be both a co-maker of the will and the witness to the will of her co-maker. 




 I would find that because Dena's role as a co-maker of the joint will disqualified her from
also being a witness to her co-maker's signature, the will fails. 



 Bailey C. Moseley

 Justice


Date Submitted: August 19, 2009

Date Decided: September 29, 2009
1. Dena also argues that the court should apply the well-recognized rules of construction to
interpret the will. However, we may not apply the rules of construction to determine the testator's
intent unless the language of the will is ambiguous. See Ferguson, 45 S.W.2d at 1097.



alse" Name="Medium Grid 3 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00205-CR

                                                ______________________________

 

 

                                    RAY BOYD ASHLOCK,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                            Trial
Court No. 20222

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Ray Boyd
Ashlocks community supervision has been revoked on the motion of, and
prosecution by, the office of Richard Glaser, the elected Criminal District
Attorney for Fannin County.  Appealing
the revocation and resulting sentence, Ashlock complains that Glasers office was
not authorized to prosecute the revocation. 
We affirm the trial courts judgment, because (1) the Fannin County
Criminal District Attorney was authorized to represent the State, (2) the trial
court was not required to memorialize its ruling in writing, and (3) Ashlock
failed to show harm.

            Some history
is needed to understand the situation presenting itself.  After Ashlock was charged with first degree
felony theft in 2001, the standing prosecutor at the time, Fannin County
Attorney Myles Porter, recused himself and his office; and the trial court
named Joel Durrett as the prosecutor pro tem in this cause.[1]  Ashlock was ultimately convicted and
sentenced to ten years confinement. 
Several months after entry of judgment, Ashlocks sentence was probated
and he was placed on community supervision for a period of ten years. 

            In 2007,
while Ashlock was on community supervision, the Texas Legislature created the
office of the Criminal District Attorney of Fannin County, effective January 1,
2008.  See Tex. Govt Code Ann. § 44.174 (Vernon Supp. 2010).  When Ashlock was arrested for shoplifting in
August 2010, Glaser moved to revoke Ashlocks community supervision.  Ashlock objected to the participation of the
Fannin County Criminal District Attorney, based on the ongoing appointment of
the prosecutor pro tem. The trial
court overruled Ashlocks objection and permitted the Fannin County Criminal
District Attorney to represent the State at the revocation hearing.  The trial court granted the States motion to
revoke and sentenced Ashlock to ten years confinement.  

            Because
there is no written motion seeking to vacate the order appointing the attorney
pro tem and no written order granting same, we examine the record of the
related proceedings.  Both the State and
Ashlock presented arguments regarding the continued representation of the State
by the attorney pro tem.  The district
attorney requested the trial court to withdraw the order appointing the
attorney pro tem, in that the district attorneys predecessor voluntarily
recused.  The district attorney stated,
I do not operate under the same disqualification that my predecessor did and
do not wish to be recused.  Ashlock maintained
that the order of appointment was not limited in time and that the attorney pro
tem was appointed for all proceedings in this matter and is responsible for the
complete prosecution of the cause, including any revocation procedures.  According to Ashlock, once the original
prosecutor was disqualified, the attorney pro tem was the only person who could
then prosecute the action.  

             In response, the State argued that there is no
longer a conflict.  The previous attorney
had a friendship and he voluntarily recused himself.  The present Criminal District Attorneys
office does not continue with that same conflict.  

 

            The trial
court took judicial notice that Joel Durrett remains an assistant district
attorney over in the Grayson County District Attorneys Office.[2]  The trial courts ruling authorized

the current district attorney to rescind any previous
recusals that had been requested by Myles Porter who served as County
attorney.  The duties of the prosecution
of this case will then be in the Fannin County Criminal District Attorneys
Office and well proceed at this time, having addressed those issues.

 

(1)        The Fannin County Criminal District
Attorney Was Authorized to Represent the State

 

            The appointment of attorneys
pro tem is governed by Article 2.07 of the Texas Code of Criminal Procedure:

Whenever an attorney for the state is
disqualified to act in any case or proceeding, is absent from the county or
district, or is otherwise unable to perform the duties of his office, or in any
instance where there is no attorney for the state, the judge of the court in
which he represents the state may appoint any competent attorney to perform the
duties of the office during the absence or disqualification of the attorney for
the state.

 

Tex.
Code Crim. Proc. Ann. art. 2.07 (Vernon 2005).  When a prosecutor voluntarily recuses, as in
this case, he or she is deemed to be disqualified under the statute.  Coleman
v. State, 246 S.W.3d 76, 81 (Tex. Crim. App. 2008).[3]  The attorney appointed after such a recusal is
called an attorney pro tem, and stands in the place of the regular attorney
for the state and performs all the duties the state attorney would have
performed under the terms of the appointment. 
Id. at 82.

            The decision
to modify an order appointing an attorney pro tem is within the sound
discretion of the trial court, and it will not be disturbed absent an abuse of
discretion.  Id. at 85.  A trial court
abuses its discretion when it acts arbitrarily and unreasonably.  Reynolds
v. State, 227 S.W.3d 355, 371 (Tex. App.Texarkana 2007, no pet.).  As long as a courts ruling is within the
zone of reasonable disagreement, it will not be disturbed on appeal.  Salazar
v. State, 38 S.W.3d 141, 15354 (Tex. Crim. App. 2001).  In short, the trial court is given a limited
right to be wrong, as long as the result is not reached in an arbitrary or
capricious manner.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

            Ashlock
maintains that, once an attorney pro tem is appointed, the case must be handled
to conclusion by the attorney pro tem. 
Ashlock relies on Coleman in
support of this position.  But Coleman stands for the proposition that
a prosecutor pro tem cannot be forced out by a defendant just because the prior
conflict has ceased.  It does not support
Ashlocks position.

            In Coleman, the defendant was charged with
aggravated perjury based on his testimony in a prior trial and in other
hearings.  Coleman, 246 S.W.3d at 7980.  The prosecutor voluntarily recused himself
from the perjury case because of the potential that he might be called as a
witness.  Id. at 80.  The court granted
the recusal and appointed two prosecutors pro tem.  Id.  Shortly before trial, a new district
attorney was elected and took office. 
Coleman sought to remove the prosecutors pro tem, claiming that the
newly elected district attorney was qualified and not conflicted, and therefore
was the only person who should prosecute the case.  Id.  The high criminal court disagreed.  In upholding the continuation of the States
representation by the attorneys pro tem, the court stated:

When the newly elected district attorney, Wally
Hatch, took office and replaced Mr. McEachern, he did not have any conflict of
interest with appellant.  If he had
wanted to do so, Mr. Hatch could have requested the trial court to terminate
the appointment of the attorneys pro tem because he was the duly elected
district attorney and was not disqualified from acting.  But Mr. Hatch chose to have the attorneys pro
tem continue to represent the State, presumably because they were ably handling
the case and were prepared for the imminent trial.  As the court of appeals noted, there is no
evidence in the record that Mr. Hatch objected to the attorneys pro tems
actions in this case.

 

Id. at 85.

 

            Ashlock
maintains that, as in Coleman, the
Criminal District Attorney in this case made no request to the trial court to
terminate the appointment of the attorney pro tem and that order, without time
limitations, continued in effect.  It is
true that no written request to
terminate the appointment of the attorney pro tem is found in this record.  The record does reveal, however, that the
Criminal District Attorney for Fannin County orally asked the trial court
specifically to rescind the order appointing the attorney pro tem.  Even though this request was not presented in
the form of a written motion, it was nevertheless presented to the trial court,
as reflected in the record.

            An attorney
pro tem shall continue to prosecute the case during the period of
disqualification of the attorney for the State. 
Tex. Code Crim. Proc. Ann.
art. 2.07(a).  Ashlock complains that,
because the record does not indicate the period of disqualification was over,
the trial court erred in permitting the Criminal District Attorney to represent
the State at the revocation hearing. 
This contention is based on the assertions that there is no record
evidence reflecting the reasons the original prosecuting attorney recused
himself and his office and that those reasons were now abated.

            Here, the
Fannin County Criminal District Attorney had the right to request that the
recusal be rescinded.  See Coleman, 246 S.W.3d at 85.  In Coleman,
the elected district attorney was entitled to make the request because he was
the duly elected district attorney and was not disqualified from acting.  Id.  Here, Glaser was the duly elected district
attorney.  Nevertheless, in order to show
that his predecessors recusal (and that of his office) should be rescinded, it
should have appeared that Glaser was not disqualified from acting, that is,
that the reasons for the original recusal of his predecessor must no longer
pertain.  The only reference in the
record to the recusal is found in Glasers statement to the trial court:

Wed ask the Court withdraw that [pro tem] order
and rescind it based on the purpose for which the appointment was made was a
voluntary recusal by my predecessor when the office was a county attorney. . .
. I do not operate under the same disqualification that my predecessor did and
do not wish to be recused.  In this case,
I believe the anticipation of the disqualification of Mr. Porter was that he
had a friendship and he voluntarily recused himself, and that was within his
authority.  There wasnt any other
conflict involved.  The office does not
continue with the same conflict, even though Im aware of and know of and have
done business with [Ashlock], but I do not perceive this to be that my office
would be conflicted out from Mr. Ashlocks case as with any other businessman
that was in town that we did business with. . . . 

 

            The trial
court apparently relied on Glasers representations regarding the reason for
the recusal and suggesting that Glaser and his office did not share the
conflict of friendship with Ashlock,[4]
but merely did business with him. 
Ashlock claims this statement is not evidence in the formal sense, and
we agree.  See White v. State, 982 S.W.2d 642 (Tex. App.Texarkana 1998, pet.
refd).  In certain circumstances,
however, unsworn statements of counsel may be relied on by the court.  See,
e.g., Goode v. Shoukfeh, 943
S.W.2d 441, 451 (Tex. 1997) (unsworn statements of counsel offered to explain
why peremptory challenges exercised); Parra
v. State, 935 S.W.2d 862, 868 n.1 (Tex. App.Texarkana 1996, pet. refd)
(nonevidence introduced and considered by court without objection during Batson[5]
hearing becomes evidence).

            Moreover,
we recognize that counsel has a duty of candor as an officer of the court and
that the trial court was entitled to rely on the fulfillment of that duty.  See Hartsell
v. State, 143 S.W.3d 233, 234 (Tex. App.Waco 2004, no pet.).  Reliance on counsels statements is
justified by Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct
which forbids a lawyer from making a false statement of material fact to a
tribunal. . . .  United States Govt v. Marks, 949 S.W.2d 320, 327 (Tex. 1997).  Given the ethical canons requirement of
candor and the acceptance of unsworn statements of counsel in other types of
proceedings, we conclude that the trial court was entitled to rely on Glasers
representations that no conflict or reason for recusal remained.  The trial court, therefore, acted within its
discretion in determining that the Fannin County Criminal District Attorney
could represent the State in the revocation hearing.[6]

(2)        The Trial Court Was Not Required to Memorialize
Its Ruling in Writing

 

            Next,
Ashlock contends that, because no order was entered which permitted anyone but the attorney pro tem
to represent the State, the Criminal District Attorney for Fannin County was
not entitled to usurp that role.  The
record herein contains neither a written order rescinding the appointment of
the attorney pro tem nor one substituting counsel.

            Article 2.07
of the Texas Code of Criminal Procedure, which controls the procedures for the
appointment of an attorney pro tem, does not set forth a procedure for the
removal of pro tem counsel.  No written
order of appointment is explicitly required. 
The pertinent language merely calls for the court to appoint any
competent attorney to perform the duties of the office during the absence or
disqualification of the attorney for the state.  Tex.
Code Crim. Proc. Ann. art. 2.07(a). 
While a written order is certainly the preferred practice, we are not
directed to caselaw which suggests or requires that the order of appointment or
the grant of a motion to rescind a recusal under Article 2.07 be in
writing.  

            The failure
to enter a written order either rescinding the States recusal or otherwise
revoking the order appointing the attorney pro tem can cause confusion,
especially if reference is made only to the clerks record.  Here, however, the trial court granted the
motion to rescind the recusal in open court on the record.  There can be no question regarding the trial
courts ruling.  We will not reverse the
judgment of the trial court merely because the grant of the States oral motion
to rescind was not memorialized in writing.

(3)        Ashlock
Failed to Show Harm

 

            While we
have found no error, we note that, even if we were to determine that the trial
court erred in rescinding the recusal of the prior prosecutor, any such error
must be disregarded unless it affected Ashlocks substantial rights.  See Tex. R. App. P. 44.2(b); Coleman, 346 S.W.3d at 8586.  Ashlock has neither alleged nor shown that
his rights were adversely affected by the trial courts decision to permit the
Fannin County Criminal District Attorney to represent the State in the
revocation hearing.

            We affirm
the judgment of the trial court.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          May
5, 2011    

Date Decided:             May
10, 2011

 

Do Not Publish

 











[1]The
motion for appointment of an attorney did not cite a reason for the recusal,
but merely stated:

 

COMES NOW, Myles Porter,
County Attorney for Fannin County, Texas, and pursuant to Article 2.07 CCP
[Code of Criminal Procedure], requests the Court to permit he and his office to
recuse themselves in the above styled and numbered causes [sic] and asks the
Court to appoint an attorney from outside this office to prosecute this case.

 

Durrett was the assistant district attorney for Grayson
County. 





[2]Sadly,
the appointed prosecutor pro tem was later shown to have passed away.  This revelation played no part in the
controversy as the trial courts notation for the record establishes that the
prosecutor pro tem was alive at the time of the ruling.  

 





[3]Even
one who is not legally disqualified may request to be recused from a case and
replaced with a different attorney in order to avoid even the appearance of
impropriety.  Coleman, 246 S.W.3d at 81. 
Alternatively, a prosecutor may choose to recuse to protect against a
violation of the Rules of Professional Conduct. 
State ex rel. Eidson v. Edwards,
793 S.W.2d 1, 6 (Tex. Crim. App. 1990).





[4]Glaser
did not specifically state Porters friendship was with Ashlock, but this is
implied in his statement to the trial court. 
In any event, Glaser stated that neither he nor his office was
conflicted in this case.

 





[5]Batson v. Kentucky, 476 U.S. 79 (1986).






[6]It
is also worth noting that elected officials, such as a district attorney, enjoy
a special status linked to their election by the voters and that such an
official has a right to serve in that officeshort of a due process
violationunless statutorily decreed procedures are followed to remove him or
her from office.  See State ex rel. Young v.
Sixth Judicial Dist. Court of Appeals at Texarkana, 236 S.W.3d 207, 211 n.15
(Tex. Crim. App. 2007); Edwards, 793
S.W.2d at 45.  This conclusion is
supported by the protected nature of elected office in general and that of a
district attorney in particular.  Because
a district attorneys office is constitutionally created and protected, his
or her authority cannot be abridged or taken away.  Landers v. State, 256 S.W.3d 295, 30304 (Tex.
Crim. App. 2008) (quoting Edwards,
793 S.W.2d at 4).  A trial court may not
disqualify a district attorney or his staff on the basis of a conflict of
interest that does not rise to the level of a due-process violation.  State ex rel. Hill v. Pirtle, 887 S.W.2d 921, 927 (Tex. Crim.
App. 1994).  With no such violation or
disqualification of the present district attorney appearing in the record, the
trial court acted in accordance with this protected status in restoring the
duties of office in this case.